CITY OF FLORENCE, CIRSA, and
Industrial Claim Appeals Office of
the State of Colorado, Petitioners

v.

Booth PEPPER, Respondent.

No. 05SC812.

Supreme Court of Colorado,
En Banc.

Oct. 2, 2006.

Ritsema & Lyon, P.C., T. Paul Krueger, II, Denver, Colorado, Attorneys for Petitioners, City of Florence and CIRSA.

John W. Suthers, Attorney General, Mark N. McMullen, Assistant Attorney General, State Services Section, Denver, Colorado, Attorneys for Petitioner, Industrial Claim Appeals Office.

Koncilja & Koncilja, P.C., James R. Koncilja, Stephen M. Johnston, Pueblo, Colorado, Attorneys for Respondent.

Erin E. Goff, Colorado Municipal League, Denver, CO, Light, Harrington & Dawes, P.C., Steven J. Dawes, Stephen A. Fermelia, Denver, CO, Attorneys for Amicus Curiae, Colorado Municipal League.

Justice MARTINEZ delivered the Opinion of the Court.

The Respondent, Booth Pepper, brought this action in 2003 against the City of Florence, the Industrial Claim Appeals Office ("ICAO"), and the City's insurer, the Colorado Intergovernmental Risk Sharing Agency ("CIRSA"), seeking damages for injuries allegedly sustained from an incident that occurred in 2001 while Pepper was acting in his capacity as a volunteer reserve police officer for the City of Florence. The administrative law judge ("ALJ") dismissed Pepper's claim on summary judgment motion, finding that his claim was barred by section 8–40–202(1)(a)(I)(A), C.R.S. (2001). This provision allowed the City of Florence to elect whether to include volunteer reserve police officers within the meaning of "employee" for purposes of workers' compensation coverage.

As the City of Florence did not opt to include volunteer reserve police officers within the meaning of "employee" in 2001, the ALJ found Pepper's claim was barred.

The ICAO affirmed the ALJ's decision. Pepper then appealed, arguing that the provision was unconstitutional and violated his equal protection rights. In a split decision, the court of appeals agreed with Pepper and reversed the decisions below. *Pepper v. Indus. Claim Appeals Office*, 131 P.3d 1137 (Colo.App.2005).

We granted certiorari to review Pepper's claim. Upon review of the relevant statutes, we find that a separate section of the Colorado Revised Statutes, section 18–1–901(3)(*l*)(IV.5),[1] effectively repealed that portion of section 8–40–202(1)(a)(I)(A) that leaves workers' compensation coverage of volunteer reserve police officers to the discretion of the county, town, city, or municipality.

Section 18–1–901(3)(*l*)(IV.5)(E) mandates workers' compensation coverage of volunteer reserve police officers by a city, county, or town. As we find the General Assembly intended to repeal the earlier enactment of the workers' compensation provision with this more recent statute, we hold that insofar as the workers' compensation provision conflicts with section 18–1–901(3)(*l*)(IV.5)(E), the conflicting portion of the workers' compensation provision is repealed. Accordingly, we decline to address the constitutionality issue raised below. We affirm the judgment of the court of appeals on different grounds.

## I. Facts and Procedural History

In 2003, Respondent, Booth Pepper, filed a claim for workers' compensation benefits in connection with his duties as a volunteer reserve police officer in the City of Florence. His claim alleged he suffered stress resulting from a shooting incident which occurred in 2001. In response, the City of Florence sought to dismiss his claim, citing section 8–40–202(1)(a)(I)(A). Section 8–40–202(1)(a)(I)(A) gives municipalities the option

---

1. Section 18–1–901(3)(*l*)(IV.5)(E), C.R.S. (1996) was repealed by H.B. 03–1266, 64th Leg., 1st Reg. Sess. (Colo.2003) and replaced by section 16–2.5–110(5), C.R.S. (2006). 2003 Colo. Sess. Laws 1607–08.

to include or exclude volunteer reserve police officers within the meaning of "employee" for purposes of the workers' compensation provisions. As the City of Florence elected to exclude volunteer reserve police officers within the meaning of "employee" in 2001, the City argued it was not liable for Pepper's workers' compensation claim.

In lieu of a hearing, the parties stipulated a number of facts. The parties agreed that at the time of the incident, Pepper was a volunteer reserve police officer for the City of Florence. They also agreed that Pepper's alleged injuries arose from an incident which occurred while Pepper was performing his duties as a volunteer reserve police officer. The parties also noted the language of section 8–40–202(1)(a)(*l*)(A) and stipulated that the City of Florence had elected to exclude volunteer reserve police officers from the definition of "employee" in 2001.[2] Based upon these stipulated facts, the ALJ found Pepper was not an employee of the City of Florence under section 8–40–202(1)(a)(I)(A) and thereby dismissed Pepper's claim. Although Pepper questioned the constitutionality of this provision, his challenge was not addressed by the ALJ, as the ALJ lacked jurisdiction to decide the constitutional issue.

Pepper appealed the decision to the ICAO. The ICAO concluded that Pepper was not an employee of the City of Florence, and affirmed the decision of the ALJ. Like the ALJ, the ICAO panel lacked jurisdiction over constitutional issues and so declined to address Pepper's argument that the statute violated his equal protection rights.

Pepper appealed the ICAO decision to the court of appeals. The court of appeals then addressed whether section 8–40–202(1)(a)(I)(A) violated Pepper's equal protection rights. In a split decision, the court of appeals concluded that the statute was unconstitutional, finding that the statutory classification did not bear a rational relationship to a legitimate government purpose. *Pepper*, 131 P.3d at 1140.

We granted certiorari to review Pepper's claim. During oral arguments before this Court, the Assistant Attorney General brought to the Court's attention a possible statutory conflict between a workers' compensation provision, section 8–40–202(1)(a)(I)(A) and a reserve police officer criminal justice provision, section 16–2.5–110(5). Section 16–2.5–110(5), C.R.S. (2006) is the current incarnation of section 18–1–901(3)(*l*)(IV.5)(E), C.R.S. (1996), the statutory provision in operation at the time of Pepper's alleged injury in 2001. Section 18–1–901(3)(*l*)(IV.5)(E) requires municipalities to provide worker' compensation coverage for volunteer reserve officers acting within the scope of their assigned duties.

Following additional briefing to the Court and our review of these statutes, we now resolve this case on the basis of the relevant statutes and do not reach the constitutional issue raised below.

We find section 18–1–901(3)(*l*)(IV.5)(E) effectively repealed that portion of section 8–40–202(1)(a)(I)(A) that leaves workers' com-

---

2. The specific stipulations are as follows:
  1. Claimant [Pepper] was sworn in as a volunteer reserve police officer by Respondent/Employer [City of Florence] on July 26, 2001.
  2. Claimant [Pepper] filed a stress claim in 2003 with a date of incident of September 28, 2001. Claimant [Pepper] alleges that he experienced stress as a result of a shooting incident which occurred on September 28, 2001.
  3. At the time of the incident on September 28, 2001, Claimant [Pepper] was performing his duties as a volunteer reserve police officer.
  4. Claimant [Pepper] was sworn in on October 8, 2001 as a temporary full-time patrol officer for Respondent/Employer [City of Florence].
  5. Section 8–40–202(1)(a)(*l*)(A), C.R.S. provides "Members of volunteer police depart-

ments, volunteer police reserves, and volunteer police teams or groups in any county, city, town, or municipality, while actually performing duties as volunteer police officers, may be deemed employees within the meaning of this paragraph (a) at the option of the governing body of such county or municipality."
  6. In the year 2001, the City of Florence, at their option, chose not to include volunteer police reserve officers as employees under their workers' compensation policy.
  7. At the time the incident occurred on September 28, 2001, Claimant was not an employee of the City of Florence.
ALJ Order, Corrected Specific Findings of Fact, Conclusions of Law, and Order, Dated October 17, 2003.

pensation coverage of volunteer reserve police officers to the discretion of the county, town, city, or municipality. Under section 18–1–901(3)(*l*)(IV.5)(E), workers' compensation coverage of volunteer reserve police officers is mandatory. Accordingly, we affirm the judgment of the court of appeals on different grounds.

## II. Analysis

■ When interpreting a statute, the primary task of the court is to give effect to the intent of the legislature. *Lakeview Assocs. v. Maes,* 907 P.2d 580, 584 (Colo.1995). Where possible, we interpret conflicting statutes in a manner that harmonizes the statutes and gives meaning to other potentially conflicting statutes. *See Bynum v. Kautzky,* 784 P.2d 735, 738 (Colo.1989). "[I]f the statute appears to conflict with other provisions, then we may rely on other factors, such as legislative history, prior law, the consequences of a given construction of the statute, and the end to be achieved by the statute, to determine the meaning of a statute." *Martin v. People,* 27 P.3d 846, 851 (Colo. 2001).

■ If two acts of the General Assembly may be construed to avoid inconsistency, the court is obligated to construe them in that manner. *People v. James,* 178 Colo. 401, 404, 497 P.2d 1256, 1257 (1972). However, when two statutes are irreconcilable, the General Assembly has directed us to uphold the more recent statute. § 2–4–206, C.R.S. (2006)[3]; *see also Slater v. McKinna,* 997 P.2d 1196, 1199 (Colo.2000) ("If two or more statutes passed at different legislative sessions are irreconcilable, the statute with the latest effective date prevails."). A statutory construction that effects a repeal by implication is not favored unless unavoidable. *Chism v. People,* 80 P.3d 293, 295 (Colo.2003) (citing *James,* 178 Colo. at 404, 497 P.2d at 1257.) The intent to repeal by implication "must appear clearly, manifestly, and with

cogent force." *Prop. Tax Adm'r v. Prod. Geophysical Servs.,* 860 P.2d 514, 518 (Colo. 1993).

■ Although the doctrine is not favored, it nonetheless exists for "those unique circumstances in which the legislature evinces its intent to alter a prior statute by the subsequent passage of a clearly contradictory provision." *Colo. State Bd. of Med. Exam'rs v. Jorgensen,* 198 Colo. 275, 281, 599 P.2d 869, 874 (1979) (citations omitted). The rule is designed to aid the Court in best effectuating the legislative intent, "and legislative intent is the guiding light in the interpretation of any statutory enactment." *Id.*

■ The relevant statutes in this case, section 8–40–202(1)(a)(I)(A) and section 18–1–901(3)(*l*) (IV.5) (E), are plainly in conflict with one another. The workers' compensation provisions, sections 8–40–101 to 8–55–105, were originally enacted in 1963 and replaced an earlier version of Colorado's workers' compensation law. The definition of "employee" found in the 1990 Act allows for a county, town, city, or municipality to elect whether volunteer reserve police officers may be deemed "employees" for purposes of workers' compensation coverage. § 8–40–202(1)(a)(I)(A), C.R.S. (1990 & Supp.1997).[4] The definition of "employee" states in relevant part:

Members of volunteer police departments, volunteer police reserves, and volunteer police teams or groups in any county, city, town, or municipality, while actually performing duties as volunteer police officers, may be deemed employees within the meaning of this paragraph (a) at the option of the governing body of such county or municipality.

§ 8–40–202(1)(a)(I)(A), C.R.S. (1990 & Supp. 1997).

In contrast, the Colorado criminal justice statutes which define volunteer reserve po-

---

3. Section 2–4–206, C.R.S. (2006) states:
   If statutes enacted at the same or different sessions of the general assembly are irreconcilable, the statute prevails which is latest in its effective date. If the irreconcilable statutes have the same effective date, the statute prevails which is latest in its date of passage.

4. Although the definition of "employee" was amended in 1997, the relevant portion of the definition related to reserve police officers remains unchanged from its enactment in 1990.

lice officers, section 18–1–901(IV.5), clearly state that volunteer reserve police officers are entitled to workers' compensation coverage. Subsection E of section 18–1–901(IV.5), the provision of primary concern here, was added in 1996. It states:

A peace officer, level IIIa, serves without compensation but may be reimbursed at the discretion of the city, city and county, town, or county for any authorized out-of-pocket expenses incurred in the course of his or her duties. *The city, city and county, town, or county shall pay the cost of workers' compensation benefits for injuries incurred by a police officer, level IIIa, while on duty and while acting within the scope of assigned duties.* A peace officer, level IIIa, is an authorized volunteer for purposes of article 10 of title 24, C.R.S.

§ 18–1–901(3)(*l*)(IV.5)(E), C.R.S. (1996) (emphasis added).

Under the classification scheme set forth in this section, a "level IIIa" peace officer is the designation for volunteer reserve police officers. Accordingly, the relevant portions of these two conflicting statutes, section 8–40–202(1)(a)(I)(A) and section 18–1–901(3)(*l*)(IV.5)(E), address the same narrow and specific concern, namely, whether a city, town, county or municipality has the discretion to exclude volunteer reserve police officers from workers' compensation coverage for injuries incurred while acting within the scope of the officer's assigned duties. The workers' compensation provision, section 8–40–202(1)(a)(I)(A), would permit discretion, whereas the criminal justice statute, section 18–1–901(3)(*l*)(IV.5)(E), would not. By their plain terms, the two statutes are irreconcilable.

In addressing these conflicting statutes, we examine the circumstances of these provisions to determine if the legislature has demonstrated the intent to alter the earlier statute by the subsequent passage of a clearly contradictory provision.

### A. Workers' Compensation Act of Colorado

The first statute which concerns us here is the section within the Workers' Compensation Act of Colorado which defines "employ-ee." The statutes addressing workers' compensation were recodified in articles 40 to 47 of Title 8 of the Colorado Revised Statutes in 1990 as the Workers' Compensation Act of Colorado. §§ 8–40–101 to 8–47–208, C.R.S. (1990); 1990 Colo. Sess. Laws 468–556.

In 1993, a subsection was added to the definition of "employee" in section 8–40–202. § 8–40–202(2)(a), C.R.S. (1993); 1993 Colo. Sess. Laws 356. Subsection 8–40–202(2)(a) added an objective test for determining whether an individual was an "employee" for purposes of the Act. In 1995, additional changes were made to reflect the 1993· requirements. § 8–40–202(2)(b), C.R.S. (1995); 1995 Colo. Sess. Laws 34344. Finally, in 1997, section 8–40–202(1)(a)(I)(A) was amended to include language and provisions addressing volunteer firefighters. § 8–40–202(1)(a)(I)(A), C.R.S. (1997); 1997 Colo. Sess. Laws 170–71; *see also* 1997 Colo. Sess. Laws 1005–06. The portion of section 8–40–202(1)(a)(I)(A) related to volunteer reserve police officers, however, remained unchanged from the 1990 enactment. This portion allowed cities, such as the City of Florence, to include volunteer reserve police officers within the definition of "employee" for purposes of workers' compensation coverage at their discretion.

In the amended 1993 legislative declaration to the workers' compensation provisions, the declaration noted that "the determination of whether an individual is an employee for purposes of the 'Workers' Compensation Act of Colorado' is subject to a great deal of speculation and litigation." § 8–40–102(2), C.R.S. (1993). To alleviate this problem, the General Assembly declared that part of the Act's purpose is "to provide an easily ascertainable standard for determining whether an individual is an employee." *Id.* Although this declaration of intent was added subsequent to the enactment of the particular portion of section 8–40–202(1)(a)(I)(A) that concerns us here, we nonetheless consider the General Assembly's stated intent of establishing an easily ascertainable standard in guiding our understanding of that provision as a whole.

Although section 8–40–202(1)(a)(I)(A) offers a lengthy definition of "employee," we are concerned here only with the last part of the definition which directly conflicts with section 18–1–901(3)(*l*)(IV.5)(E). That portion of section 8–40–202(1)(a)(I)(A) states:

> Members of volunteer police departments, volunteer police reserves, and volunteer police teams or groups in any county, city, town, or municipality, while actually performing duties as volunteer police officers, may be deemed employees within the meaning of this paragraph (a) at the option of the governing body of such county or municipality.

§ 8–40–202(1)(a)(I)(A), C.R.S. (1990 & Supp. 1997). Although amendments have been made to other portions of this provision, the General Assembly has not made any changes to this portion of section 8–40–202(1)(a)(I)(A) or otherwise indicated a change in the intent since its enactment in 1990, beyond the aforementioned desire for additional clarity within the definition as a whole evinced in the legislative declaration.

### B. Reserve Police Officer Criminal Justice Provisions

The second statute of concern, section 18–1–901(3)(*l*)(IV.5)(E), has an almost entirely distinct history from the workers' compensation provisions. In 1988, sections 18–1–901(3)(*l*)(IV.5)(AD) were enacted to establish state regulatory control over reserve police officers. As relevant here, section 18–1–901(3)(*l*)(IV.5)(C) stated:

> "Reserve police officer, reserve deputy sheriff, or reserve marshal" means an individual who volunteers to serve as an adjunct to the regular force of peace officers of a city, city and county, town, or county and whose services are accepted and duly authorized to be on duty. Such individual serves without compensation, but may be reimbursed at the discretion of the city, city and county, town, or county for any authorized out-of-pocket expenses incurred in the course of his duties as reserve police officer, reserve deputy sheriff, or reserve marshal. *The city, city and county, town, or county shall pay the cost for workmen's compensation benefits for injuries incurred by the reserve police officer, reserve deputy sheriff, or reserve marshal while on duty and while acting within the scope of his assigned duties.*

§ 18–1–901(3)(*l*)(IV.5)(C), C.R.S. (1989) (emphasis added); 1988 Colo. Sess. Laws 721–22. This provision made workers' compensation coverage of volunteer reserve police officers mandatory and did not allow for cities, counties, towns, or municipalities to elect coverage at their discretion. In 1990, the term "workmen's" was replaced with "workers'" in this section to reflect the language of the newly recodified Colorado Workers' Compensation Act. § 18–1–901(3)(*l*)(IV.5)(C), C.R.S. (1990); 1990 Colo. Sess. Laws 565. No other changes were made at that time.

In 1996, a significant number of changes were made to section 18–1–901(3)(*l*)(IV.5). § 18–1–901(3)(*l*)(IV.5), C.R.S. (1996); 1996 Colo. Sess. Laws 1574–76. As part of this omnibus clean up bill, the relevant portion of section 18–1–901(3)(*l*)(IV.5) addressing workers' compensation and reserve police officers was moved to subsection E. Subsection E states:

> A peace officer, level IIIa, serves without compensation but may be reimbursed at the discretion of the city, city and county, town, or county for any authorized out-of-pocket expenses incurred in the course of his or her duties. *The city, city and county, town, or county shall pay the cost for workers' compensation benefits for injuries incurred by a police officer, level IIIa, while on duty and while acting within the scope of assigned duties.* A peace officer, level IIIa, is an authorized volunteer for purposes of article 10 of title 24, C.R.S.

Section 18–1–901(3)(*l*)(IV.5)(E), C.R.S. (1996) (emphasis added). This section went unchanged from the time of its enactment in 1996 until 2003. In 2003, the entire section was repealed and reenacted in section 16–2.5–110 (effective Aug. 6, 2003). Section 16–2.5–110, C.R.S. (2003); 2003 Colo. Sess. Laws 1607–08. Here, however, we need only concern ourselves with the statute as it existed in 2001, the date of Pepper's claimed injury. *See Kinninger v. Indus. Claim Appeals Office,* 759 P.2d 766, 767 (Colo.App.1988) ("[I]n workmen's compensation cases, the rights

and liabilities of the parties are determined by the statute in effect at the time of the claimant's injury.") (citing *Miller v. Halliburton Services*, 689 P.2d 662 (Colo.App.1984), *aff'd* 720 P.2d 571 (Colo.1986)); *see also Am. Comp. Ins. Co. v. McBride*, 107 P.3d 973, 977 (Colo.App.2004) ("In workers' compensation cases, the substantive rights and liabilities of the parties are determined by the statute in effect at the time of a claimant's injury, while procedural changes in the statute become effective during the pendency of a claim.").

In 2001, the most recent change to these provisions that reflects the General Assembly's intent to address workers' compensation coverage for volunteer reserve police officers is the enactment of section 18–1–901(3)(*l*)(IV.5)(E) in 1996. This is the only statutory change to address the workers' compensation concern subsequent to the enactment of either of the statutes at issue here. In effect, this is the only amendment which demonstrates a clear and manifest intent to address whether a city, town, county or municipality has the discretion to exclude volunteer reserve police officers from workers' compensation coverage for injuries incurred while acting within the scope of the officer's assigned duties. *See Prop. Tax Adm'r*, 860 P.2d at 518. Accordingly, section 18–1–901(3)(*l*)(IV.5)(E), which removes discretion from the determination of whether a volunteer police officer is covered by workers' compensation, is the most recent evidence of the General Assembly's intent.

In comparing these provisions side by side, the General Assembly's intent to address workers' compensation coverage for volunteer reserve police officers can be seen in the 1990 enactment of section 8–40–202(1)(a)(I)(A), and in the 1996 enactment of section 18–1–901(3)(*l*)(IV.5)(E). Applying the principle codified in section 2–4–206, that

the more recent of two irreconcilable statutes prevails, we conclude that section 18–1–901(3)(*l*)(IV.5)(E) prevails. We find this accords with the General Assembly's most recent and manifest intent to mandate workers' compensation coverage of volunteer reserve police officers and is also in harmony with the stated desire for an "easily ascertainable standard for determining whether an individual is an employee" in the workers' compensation provisions as a whole. Accordingly, insofar as section 8–40–202(1)(a)(I)(A) conflicts with section 18–1–901(3)(*l*)(IV.5)(E), that portion of section 8–40–202(1)(a)(I)(A) is repealed by implication.

## C. Application

Applying section 18–1–901(3)(*l*)(IV.5)(E) to the case at bar, we find that Pepper is entitled to workers' compensation coverage. The parties stipulated that: (1) Pepper was sworn in as a volunteer reserve police officer by the City of Florence on July 26, 2001, and (2) Pepper was performing his duties as a volunteer reserve police officer at the time of the incident on September 28, 2001. As a voluntary reserve police officer, Pepper is designated as a level IIIa officer under the statutory scheme of the criminal justice provisions.[5] Thus, under section 18–1–901(3)(*l*)(IV.5)(E), the City of Florence must pay the costs of workers' compensation benefits for any injuries Pepper incurred while on duty and while acting within the scope of his assigned duties.

## III. Conclusion

Although this case was initially appealed on constitutional grounds, we resolve it on a purely statutory basis. Where possible, we avoid a constitutional analysis in favor of a statutory resolution. *Pace Membership Warehouse, Div. of K–Mart Corp. v.*

---

5. Pepper need not demonstrate that he has satisfied the Police Officer Standards and Training Board ("P.O.S.T.") training certifications required by the statute because the parties have already stipulated his reserve status. Even absent this stipulation, however, P.O.S.T. certification is not required for classification under the statutory scheme. In *Fraternal Order of Police, Colo. Lodge # 27 v. City & County of Denver*, 914 P.2d 483, 486 (Colo.App.1995), *aff'd* on separate grounds 926 P.2d 582 (Colo.1996), a division of

the court of appeals determined that deputy sheriffs need not be P.O.S.T. certified in order to meet the definition of "peace officer" under section 18–1–901(3)(*l*)(I). There, the court of appeals noted that "consideration of a certification requirement as part of the definition of peace officer would be a circular process," and therefore concluded that "the certification requirement does not constitute a part of the referenced definition." *Id.*

*Axelson,* 938 P.2d 504, 511 (Colo.1997) (citing *Adams County Sch. Dist. v. Heimer,* 919 P.2d 786, 790 (Colo.1996)). Because the General Assembly repealed by implication that portion of section 8–40–202(1)(a)(I)(A) which Pepper challenged below, we do not address his constitutional challenge. Rather, we find that insofar as section 8–40–202(1)(a)(I)(A) irreconcilably conflicts with section 18–1–901(3)(*l* )(IV.5)(E), that portion of section 8–40–202(1)(a)(I)(A) is repealed by implication. Consequently, we affirm the judgment of the court of appeals on different grounds.

Justice EID does not participate.