The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 11, 2018

## 2018COA3

**No. 17CA0097, *L.J. v. Carricato* — Government — Colorado
Governmental Immunity Act — Immunity and Partial Waiver —
Actions Against Public Employees; Dependency and Neglect —
Child Protection Act of 1987**

A division of the court of appeals considers whether the
Colorado Governmental Immunity Act (CGIA), §§ 24-10-101 to -120,
C.R.S. 2017, bars claims against a city and a police officer for
alleged violation of the Child Protection Act of 1987 (CPA), §§ 19-3-
301 to -318, C.R.S. 2017. The division concludes that the two
statutes do not conflict. Thus, the CGIA bars the claim against the
city for alleged violation of the CPA because the claim lies or could
lie in tort. Additionally, the claim against the city for vicarious
liability must be dismissed because public entities do not waive
immunity for an employee's willful and wanton conduct.

The division also concludes, based on *Martinez v. Estate of Bleck*, 2016 CO 58, that the claims against the police officer must be remanded for a *Trinity* hearing to allow the district court to determine whether the officer's conduct was in fact willful and wanton.

Finally, the division concludes that the claim for exemplary damages against the police officer was prematurely pled.

Accordingly, the division reverses the judgment and remands the case in part with directions.

COLORADO COURT OF APPEALS

Court of Appeals No. 17CA0097
El Paso County District Court No. 15CV33722
Honorable Robin Chittum, Judge

L.J., individually and as surviving parent of D.J.M., deceased,

Plaintiff-Appellee,

v.

Justin Carricato, individually and in his capacity as an officer with the City of Colorado Springs Police Department; and the City of Colorado Springs, Colorado,

Defendants-Appellants.

JUDGMENT REVERSED IN PART
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE FOX
Freyre and Kapelke*, JJ., concur

Announced January 11, 2018

Deere Law, LLC, Joshua M. Deere, Colorado Springs, Colorado, for Plaintiff-Appellee

Wynetta Massey, City Attorney, W. Erik Lamphere, Division Chief, Colorado Springs, Colorado, for Defendants-Appellants

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1 The City of Colorado Springs (City) and Officer Justin Carricato appeal the district court's partial denial of their motion to dismiss for lack of subject matter jurisdiction based upon the Colorado Governmental Immunity Act (CGIA), §§ 24-10-101 to -102, C.R.S. 2017. We reverse the portions of the judgment on the claims against the City, the vicarious liability claim, and the exemplary damages claim. We remand the portion of the judgment relating to the claims against Officer Carricato.

## I. Background

¶ 2 D.J.M., age two, died on January 17, 2015, after suffering a beating by his mother's boyfriend, R.A. D.J.M.'s father, L.J. (father), brought a wrongful death action against the City and Officer Carricato, individually and in his capacity as an officer with the City of Colorado Springs Police Department (Department).

### A. Facts Alleged in Father's Complaint

¶ 3 Father and M.J. (mother), D.J.M.'s mother, shared custody of D.J.M. in accordance with a temporary parenting time order. D.J.M. spent five days a week with mother and the other two with father. Parenting time exchanges took place at the Department's Sand Creek Division (Police Station).

1

¶ 4    In November 2014, father and his mother (grandmother) began noticing signs of physical trauma on D.J.M. such as marks, bruises, lacerations, and discoloration on his skin and genitalia. D.J.M. lost weight and demonstrated signs of significant emotional trauma. By early December, he would cry and beg to stay with father and grandmother when he was dropped off at the Police Station for mother's parenting time.

¶ 5    On the first Saturday of December 2014, father told the Police Station's front desk attendant that he suspected D.J.M. was being abused by mother or R.A. He showed the attendant the marks and bruises on D.J.M., and said he did not want to turn D.J.M. over to mother. The attendant told father that he had to turn D.J.M. over to mother, or he would be arrested for refusing to obey a court order. The attendant told father he could not make an official police report at that time, but that he should take photographs of D.J.M.'s injuries. Over the next three weeks, father repeatedly showed D.J.M.'s marks and bruises and photos of the injuries to the Police Station attendant.

¶ 6    When father picked D.J.M. up at the Police Station on Christmas Day 2014, he was so concerned by D.J.M.'s condition

that he insisted the police make an official report. The attendant told father to go home and call the police and an officer would visit them at their home. Father did so, and Officer Carricato responded to the call.

¶ 7 Officer Carricato visited father's home, where he interviewed father, took pictures of D.J.M., and made an internal police report. He reiterated that father must continue to abide by the court's parenting time order. Officer Carricato called mother from his police cruiser on Christmas Day; this was the only phone call he made to mother's home. Officer Carricato did not visit mother's house, speak to R.A., or have further meetings with father and D.J.M. No report was made to the El Paso County Department of Human Services or any other state or county agencies before D.J.M.'s death.

¶ 8 From December 25, 2014, to January 10, 2015, father and grandmother continued to make the same complaints at the Police Station when they dropped off D.J.M. On January 14, father learned that D.J.M. had been rushed to the hospital. D.J.M. had suffered serious injuries that were consistent with having been thrown against a wall. He was transferred to Children's Hospital in

Denver where a portion of his skull was removed to alleviate brain swelling. After the surgery, he remained in a coma until he died on January 17, 2015.

¶ 9    The cause of death was homicide brought on by complications from blunt-force injuries. Detectives investigating the case determined that some of D.J.M.'s injuries were sustained weeks before the January 14 incident. They also confirmed that in the weeks preceding D.J.M.'s death, father had tried to bring D.J.M.'s injuries to the attention of the Colorado Springs police.

### B.    Procedural History and Standard of Review

¶ 10    Father's complaint alleges: (1) a violation of the reporting requirement of the Child Protection Act of 1987 (CPA), §§ 19-3-301 to -318, C.R.S. 2017, by the City and Officer Carricato; (2) negligence (wrongful death) by the City and Officer Carricato; (3) negligence per se by the City and Officer Carricato; (4) a 42 U.S.C. § 1983 (2012) claim against the City and Officer Carricato; (5) vicarious liability against the City; and (6) an entitlement to

exemplary damages under section 24-10-118(1)(c), C.R.S. 2017 against Officer Carricato.[1]

¶ 11     Under the CPA, certain individuals — including police officers — are required to report known or suspected child abuse to the county department, local law enforcement agency, or through the child abuse hotline.  § 16-2.5-101(1), C.R.S. 2017; § 19-3-304(1)(a)-(b)(2)(s), C.R.S. 2017.  The county department or local law enforcement agency must then submit a report to the state department.  § 19-3-307(1), C.R.S. 2017.  Any person who willfully violates the reporting mandate commits a class three misdemeanor and "[s]hall be liable for damages proximately caused thereby."  § 19-3-304(4)(a)-(b).

¶ 12     The City and Officer Carricato moved to dismiss the state law claims.[2]  They argued that (1) father's claims were barred by the

---

[1] The second, third, and fourth claims are not at issue on this appeal because the parties did not contest those portions of the motion to dismiss.

[2] Because the fourth claim raised a 42 U.S.C. § 1983 (2012) claim, the City and Officer Carricato first removed the case to the United States District Court for the District of Colorado.  The federal district court dismissed the section 1983 claim, declined to exercise supplemental jurisdiction over the state law claims, and remanded the case to the El Paso County District Court.

CGIA, and (2) father failed to plead a specific factual basis showing willful and wanton conduct by Officer Carricato.

¶ 13    The district court determined that while the negligence claims for wrongful death and negligence per se were barred by the CGIA, the claim for violation of the CPA was not barred because it was not a claim based in tort. The district court allowed the claim for vicarious liability to stand insofar as it related to the violation of the CPA. Finally, the district court found, without conducting a hearing under *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993), that the complaint alleged a sufficient factual basis to support a claim of willful and wanton behavior.

¶ 14    We review the district court's interpretation of the CGIA de novo. *Gray v. Univ. of Colo. Hosp. Auth.*, 2012 COA 113, ¶ 16.

## II.    Analysis

¶ 15    The City and Officer Carricato argue that the district court erred because (1) the CGIA bars the claim for violation of the CPA, and (2) father's complaint does not allege specific facts sufficient to support a finding that Officer Carricato's conduct was willful and

wanton.[3] No Colorado case discusses the intersection of the CGIA and the CPA. We hold that the CGIA bars the claim against the City for a violation of the CPA because the claim lies or could lie in tort. Thus, the district court improperly denied that part of the motion to dismiss. We remand to the district court on the claims against Officer Carricato for a determination of whether his conduct was willful and wanton. We conclude that the claims for vicarious liability against the City must be dismissed. Finally, we agree that the claim for exemplary damages against Officer Carricato was prematurely pleaded.

## A. Public Entity Immunity

¶ 16 Under the CGIA, "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section." § 24-10-106(1), C.R.S. 2017. Under the CGIA, "the state and its subdivisions are subject to the same liability as private

---

[3] Because we decline to address the new arguments raised by the City in its reply brief, *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1187 n.3 (Colo. App. 2011), we need not strike portions of the City's reply brief as father requests via motion.

7

entities, unless the General Assembly has affirmatively protected the state from liability through immunity legislation." *C.K. v. People in Interest of L.K.*, 2017CO111, ¶ 12 (citation omitted). Because the CGIA altered the common law of negligence, we strictly construe its grant of sovereign immunity and interpret its waiver provisions broadly. *Burnett v. State Dep't of Nat. Res.*, 2013 COA 42, ¶ 7, *aff'd,* 2015 CO 19; *see also Medina v. State*, 35 P.3d 443, 453 (Colo. 2001); *Herrera v. City & Cty. of Denver*, 221 P.3d 423, 425 (Colo. App. 2009). "Nonetheless, we interpret a statute to give words and phrases their plain meaning in order to give effect to the intent of the legislature." *Burnett,* ¶ 7.

### 1.     Waivers of Sovereign Immunity

¶ 17     The CGIA lists specific exceptions where sovereign immunity for public entities is waived. § 24-10-106(1)(a)-(i). As relevant here, sovereign immunity is waived for claims brought under a statutory scheme that fits within one of the specific waiver provisions. *See State v. Moldovan*, 842 P.2d 220, 228 (Colo. 1992) (sustaining a motorist's claim against the Division of Highways for failure to maintain fences pursuant to the Fence Law because the Fence Law

8

fit within the statutory exception for injuries resulting from a dangerous condition on a public highway, § 24-10-106(1)(d)(I)).

¶ 18     Additionally, sovereign immunity can be waived for claims seeking equitable, remedial, and non-compensatory relief. *City of Colorado Springs v. Conners*, 993 P.2d 1167, 1176 (Colo. 2000) ("The CGIA's grant of immunity does not protect public entities from suits for non-compensatory relief de[s]igned to redress general harms or prohibited conduct under statutes like the [Civil Rights Act]."); *Colo. City Metro. Dist. v. Graber & Son's Inc.*, 897 P.2d 874, 877 (Colo. App. 1995) (holding that the CGIA does not shield public entities from remedial provisions allowing an award of attorney fees against a public entity that brings a frivolous claim); *cf. Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 691 (Colo. 2008) ("[W]e have never suggested that claims for relief developed and historically administered by courts of chancery or equity, rather than courts of law, necessarily fall outside the coverage of the [CGIA].").

¶ 19     Here, the City is undisputedly a "public entity." § 24-10-103(5), C.R.S. 2017; *Springer v. City & Cty. of Denver*, 13 P.3d 794, 799 (Colo. 2000) ("Cities and counties are within the

definition of 'public entity.'").  The exceptions to sovereign immunity are not applicable here because (1) the enumerated statutory exceptions are not at issue; (2) the CPA does not fit within any of the statutory exceptions; and (3) father is not requesting equitable, remedial, or non-compensatory remedies.  Thus, the question is whether father's claims against the City lie in tort or could lie in tort.  We conclude that they do.

### 2.    Claims that Lie in Tort or Could Lie in Tort

¶ 20    Whether a claim lies in tort or could lie in tort "depends on the factual basis underlying the claim and, specifically, the nature of the alleged injury."  *First Nat'l Bank of Durango v. Lyons*, 2015 COA 19, ¶ 13; *see Brown Grp.*, 182 P.3d at 690 ("[T]he notion of a 'tort' is notoriously difficult to define with any degree of precision[.]").  We assess the pleadings and undisputed evidence to determine whether "the injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law."  *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003 (Colo. 2008).  We also consider whether the relief requested "seeks to compensate the plaintiff for that injury."  *Id.*

¶ 21    Here, father's claims against the City lie in tort or could lie in tort.  Father argues that the duties imposed by the CPA originate from the statute and not from a general duty of care.  However, we must look to the injury underlying the statutory claims.  *See Lyons*, ¶¶ 13, 15; *see also City of Arvada ex rel. Arvada Police Dep't v. Denver Health & Hosp. Auth.*, 2017 CO 97, ¶ 39 ("The CGIA does not, however, grant immunity to public entities for non-tort claims, including claims based on 'contractual relations or a *distinctly non-tortious* statutorily-imposed duty.'" (quoting *Brown Grp.*, 182 P.3d at 691)) (emphasis added).

¶ 22    In *Lyons,* the question was whether a bank's claim under the Colorado Securities Act (CSA) was a claim that lies in tort or could lie in tort.  *Lyons,* ¶ 1.  The division concluded it was because in essence the CSA claim was a claim for common law fraud alleging that the bank purchased bonds in reliance on false statements or omissions of material fact and sustained financial loss as a result. *Id.* at ¶ 15.  Similarly, the essence of father's claim is that the City breached a duty of care owed to D.J.M. which caused his death. *See Pizza Hut of Am., Inc. v. Keefe*, 900 P.2d 97, 102 (Colo. 1995) ("The cause of action created by [the Wrongful Death Act] arises out

of tortious acts which injured the decedent and resulted in the decedent's death; the survivors' right of action is derivative of and dependent upon the right of action which the decedent would have had, had she survived her injuries."). The civil liability the CPA allows is rooted in traditional tort principles. § 19-3-304(4) ("Any person who willfully violates [the reporting provisions]. . . [s]hall be liable for damages *proximately caused* thereby.") (emphasis added); *Walcott v. Total Petroleum, Inc.*, 964 P.2d 609, 611 (Colo. App. 1998) ("Negligence claims cannot succeed without showing that a duty existed and that the breach of the duty was a proximate cause of the injuries alleged."). Because father's claims against the City are rooted in the tort of negligence, the motion to dismiss this claim was improperly denied.

### 3. Conflicting Statutes

¶ 23    Father argues that the CGIA and CPA conflict and thus the CPA — the statute with the later effective date (1987 versus 1971 for the CGIA) — must prevail. § 2-4-206, C.R.S. 2017 ("If statutes enacted at the same or different sessions of the general assembly are irreconcilable, the statute prevails which is latest in its effective

date.").  But, we are not persuaded that the CGIA and CPA are irreconcilable.

¶ 24    When possible, "we interpret conflicting statutes in a manner that harmonizes the statutes[.]"  *City of Florence v. Pepper*, 145 P.3d 654, 657 (Colo. 2006).  A statutory construction that would lead to repeal by implication is not favored unless it is unavoidable.  *Id.* "The intent to repeal by implication 'must appear clearly, manifestly, and with cogent force.'"  *Id.* (quoting *Prop. Tax Adm'r v. Prod. Geophysical Servs.*, 860 P.2d 514, 518 (Colo. 1993)).  In *Pepper*, two statutes were in clear conflict on whether a city had the discretion to exclude volunteer reserve police officers from workers' compensation coverage because of the statutes' differing definitions of "employee."  145 P.3d at 657-58.  The supreme court held that the more recent statute manifested a clear intent by the General Assembly to mandate workers' compensation coverage for volunteer reserve police officers; thus the conflicting, earlier statute was repealed by implication.  *Id.* at 660.

¶ 25    Here, the CPA manifests no intent to repeal the CGIA by implication.  The CPA was passed in 1987, recognizing that "reporting of child abuse is a matter of public concern."  Ch. 138,

13

sec. 1, § 19-3-302, 1987 Colo. Sess. Laws 762.  Persons who properly report information about known or suspected child abuse are immune from liability.  § 19-3-309, C.R.S. 2017 ("Any person . . . participating in good faith in the making of a report . . . shall be immune from any liability . . . .").  When first enacted, the immunity provision read, "[a]ny person . . ., participating in good faith in the making of a report . . . shall be immune from any liability, civil or criminal, or termination of employment that otherwise might result by reason of such reporting."  Ch. 138, sec. 1, § 19-3-309, 1987 Colo. Sess. Laws 770.

¶ 26    In 1989, the immunity provision was amended to include an immunity waiver "unless a court of competent jurisdiction determines that such person's behavior was willful, wanton, and malicious."  Ch. 169, sec. 7, § 19-3-309, 1989 Colo. Sess. Laws 916.  Thus, persons who report child abuse under section 19-3-304 are immune from liability unless their conduct is willful, wanton, and malicious.

¶ 27    The term "any person" is not defined in the definitions section of the Children's Code, which contains the CPA.  *See* § 19-1-103, C.R.S. 2017.  To determine the meaning of "any person" we first

14

consider whether "the statutory language has a plain and unambiguous meaning." *Bryant v. Cmty. Choice Credit Union*, 160 P.3d 266, 274 (Colo. App. 2007). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). The CPA lists persons required to report child abuse in section 19-3-304(2)(a)-(mm). All the references are clearly to persons because they are to specific occupations — such as physicians, dentists, or psychologists — or employees of particular organizations — such as public or private school employees, workers in the state department of human services, or employees of county departments of health, human services, or social services. § 19-3-304(2)(a), (d), (l), (p), (cc), (*ll*). Nowhere does section 19-3-304(2) include a specific entity as a mandatory reporter; only the entities' employees are required to report. Thus, the CPA unambiguously defines "any person" to mean people in specific occupations or employed by certain entities or any other individual who knows of or suspects child abuse. § 19-3-304(3) ("[A]ny other person may report . . . .").

15

¶ 28     Because the CPA does not mention entities, the CGIA, which clearly discusses public entities, controls on issues of public entity immunity. § 24-10-106(1); *see Jenkins v. Pan. Canal Ry. Co.*, 208 P.3d 238, 241 (Colo. 2009) ("[W]e generally only look to a statute's plain language . . . ."). As the statutes' language is clear and unambiguous, we need not look to their legislative histories. *Id.*

¶ 29     The CGIA clearly distinguishes between public entities and public employees because it discusses their respective immunity in two different sections — section 24-10-106 discusses public entity immunity and section 24-10-118 discusses public employee immunity. The two immunity provisions are not identical. Public entities enjoy sovereign immunity for tort claims unless a specific statutory exception is met. § 24-10-106(1)(a)-(i). In contrast, the immunity provision for public employees does not contain specific statutory exceptions. *See* § 24-10-118. Rather, public employees are immune from liability for tort claims unless their act or omission was willful and wanton. § 24-10-118(1); *see also* § 19-3-309.

¶ 30     The CGIA defines public employee as "an officer, employee, servant, or authorized volunteer of the public entity, whether or not

16

compensated, elected, or appointed . . . ." § 24-10-103(4)(a), C.R.S. 2017.  Thus, where the CPA includes in its list of "any person" persons who are public employees, their sovereign immunity is governed by the CGIA.  *See Pepper*, 145 P.3d at 657 ("Where possible, we interpret conflicting statutes in a manner that harmonizes the statutes and gives meaning to other potentially conflicting statutes.").  The CGIA, § 24-10-118(1), and CPA, §§ 19-3-304, -309, read together, provide that a public employee who is a mandatory reporter is immune from liability for reporting or failing to report child abuse unless his conduct is willful and wanton.  *See Town of Minturn v. Tucker*, 2013 CO 3, ¶ 27 ("[W]e presume the General Assembly meant what it said.").  Thus, we reject father's argument that the two statutes are irreconcilable.  Accordingly, we now address the issue whether Officer Carricato's conduct was willful and wanton.

### B.    Public Employee Immunity

¶ 31    Because the court did not determine whether Officer Carricato's conduct was willful and wanton, we remand for such a

determination following a *Trinity* hearing. *Martinez v. Estate of Bleck*, 2016 CO 58, ¶ 28. [4]

¶ 32 Public employees enjoy sovereign immunity for conduct which lies in tort or could lie in tort that "arises out of injuries sustained from an act or omission of such employee which occurred or is alleged in the complaint to have occurred during the performance of his duties and within the scope of his employment, unless the act or omission causing such injury was willful and wanton." § 24-10-118(1).[5] "In any action in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the complaint." § 24-10-110(5)(a), C.R.S. 2017.

¶ 33 The CGIA does not define the phrase "willful and wanton conduct." *Martinez*, ¶ 30. Our supreme court has looked to various

---

[4] While the City cited *Martinez v. Estate of Bleck*, 2016 CO 58, to the district court, it did not emphasize its holding or the importance of a hearing under *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993).
[5] We note that section 24-10-118(2)(a) adds that, in addition to waiving immunity for willful and wanton conduct, a public employee cannot assert immunity when the public entity faces liability under one of the section 24-10-106(1) waivers. But, those waiver provisions are not at issue here.

definitions of "willful and wanton conduct." *Id.*; *see, e.g., Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994) (looking to the definition of "willful and wanton" in section 13-21-102(1)(b), C.R.S. 1987, to determine exemplary damages). The supreme court has declined to pick one single definition for willful and wanton because "they all share a common feature — namely, a conscious disregard of the danger." *Martinez,* ¶ 30. Thus, public employees' actions are willful and wanton when the employees are "consciously aware that their acts or omissions create danger or risk to the safety of others, and they then act, or fail to act, without regard to the danger or risk." *Gray,* ¶ 39. A complaint cannot merely assert that a public employee's acts or omissions were willful and wanton. *Id.* at ¶ 40. At a minimum, the complaint must allege "'specific facts to support a reasonable inference' that the employee was consciously aware that his or her acts or omissions created danger or risk to the safety of others, and that he or she acted, or failed to act, without regard to the danger or risk." *Id.* (citations omitted).

¶ 34 However, it is not enough for the district court to merely determine that the complaint adequately alleged that the conduct was willful and wanton. *Martinez,* ¶ 5. The district court must

determine whether the conduct was in fact willful and wanton. *Id.* at ¶ 28. Immunity under the CGIA is a subject matter jurisdiction question that is determined according to C.R.C.P. 12(b)(1). *Trinity,* 848 P.2d at 924-25. The plaintiff bears the burden of proving jurisdiction. *Dennis ex rel. Heyboer v. City & Cty. of Denver,* 2016 COA 140, ¶ 15. The district court "may allow limited discovery and conduct an evidentiary hearing" — a *Trinity* hearing — to determine jurisdiction. *Trinity,* 848 P.2d at 924. *Trinity* hearings now "include all issues of immunity, including facts not directly disputed by the parties." *Dennis ex rel. Heyboer,* ¶ 2. *But see Medina,* 35 P.3d at 452 ("[I]f all relevant evidence is presented to the trial court, and the underlying facts are undisputed, the trial court may decide the jurisdictional issue as a matter of law . . . .").

¶ 35 Here, in its order regarding the motion to dismiss, the district court stated, "There are no facts at issue necessary for the [c]ourt to make this determination. There is also no need for a hearing." Thus, the district court ruled on the motion to dismiss without conducting a *Trinity* hearing. The court further concluded that the question whether Officer Carricato's conduct was willful and wanton was an "ultimate decision of fact for the jury." Examination

20

of the operative complaint and answer reveals that whether Officer Carricato acted willfully and wantonly is disputed. In *Martinez*, the supreme court determined that the district court erred in merely determining that the complaint sufficiently pleaded that a police officer's conduct was willful and wanton and concluding that the ultimate determination had to be left to trial. *Martinez*, ¶ 28. Thus, we remand for the district court to determine, after a hearing, whether Officer Carricato's conduct was willful and wanton.

## C. Vicarious Liability

¶ 36 Although the parties did not brief the issue, we conclude that the vicarious liability claims against the City must be dismissed.

¶ 37 The vicarious liability claims against the City for negligence per se and wrongful death based on Officer Carricato's conduct are claims that lie in tort or could lie in tort; thus, they are barred by the CGIA. *See Lyons*, ¶ 36. The City's liability under a vicarious liability theory is not based on the City's own negligent acts. *Id.* Rather, it is based on the City's vicarious liability for acts taken by Officer Carricato within the scope of his employment. *Id.* Thus, the claims for vicarious liability based on negligence per se and wrongful death sound in tort.

21

¶ 38  The claim against the City for vicarious liability based on Officer Carricato's failure to report under the CPA must also be dismissed. Even if Officer Carricato's conduct was willful and wanton, "the CGIA does not provide for the waiver of the sovereign immunity of public entities from suit based either on their own willful and wanton acts or omissions, or their employees' willful and wanton acts or omissions." *Gray*, ¶ 27; *see* § 24-10-106(1)(a)-(i) (waiving public entity sovereign immunity for only the listed statutory exceptions, not for willful and wanton conduct); *see also* § 24-10-110-(1)(a) (Public entities are liable for the costs of defending their employees from claims arising out of "injuries sustained from an act or omission of such employee occurring during the performance of his duties and within the scope of his employment, except where such act or omission is willful and wanton."). Thus, the vicarious liability claim against the City, based on Officer Carricato's failure to report under the CPA, must be dismissed.

### D.  Exemplary Damages

¶ 39  Officer Carricato argues briefly in a footnote that the claim for exemplary damages cannot stand because it was improperly

22

pleaded and that exemplary damages cannot be awarded against a police officer. We agree that the claim was improperly pleaded.

¶ 40 The CGIA allows a claim for exemplary damages against public employees only if their conduct was willful and wanton. § 24-10-118(1)(c). Similarly, in an action for wrongful death, exemplary damages may only be awarded where "the death complained of is attended by circumstances of . . . willful and wanton conduct . . . ." § 13-21-203(3)(a), C.R.S. 2017. Additionally, the claim for exemplary damages may not be included in the initial claim for relief. § 13-21-203(3)(c)(I). Exemplary damages claims must be included in an amendment to the pleadings at least sixty days after the exchange of initial disclosures and "the plaintiff establishes prima facie proof of a triable issue." *Id.* Here, father included the claim for exemplary damages in his initial complaint; thus, the exemplary damages claim was prematurely pleaded.

¶ 41 Once the *Trinity* hearing is concluded, the district court can revisit this issue, including if necessary the availability of such damages against a peace officer pursuant to section 13-21-203(6).

### III. Conclusion

¶ 42     We reverse the portion of the judgment denying the motion to dismiss the violation of the CPA claim against the City. We remand for a hearing on the portion of the judgment concerning whether Officer Carricato's conduct was willful and wanton. We reverse the portion of the judgment denying the motion to dismiss the vicarious liability claims against the City. We reverse the portion of the judgment allowing the claim for exemplary damages to stand as it is currently pleaded.

JUDGE FREYRE and JUDGE KAPELKE concur.