JUSTICE BOATRIGHT, dissenting.
¶ 42 The majority, in an attempt to harmonize two statutes, holds that when a dependency and neglect proceeding is ongoing, the state cannot utilize Article 5 procedures to terminate parental rights. In so doing, the majority perceives a conflict from the fact that Article 3 and Article 5 were enacted to address different factual scenarios and have different procedural requirements. I recognize these differences. But these differences do not create a conflict.
¶ 43 Article 5 applies when one parent relinquishes his or her parental rights, as the mother did here. In that instance, the state "shall file a petition in the juvenile court to terminate the parent-child legal relationship of the other parent." § 19-5-105(1), C.R.S. (2017). Article 3 applies when a child has been adjudicated dependent and neglected, as also happened here, and the department submits a motion alleging the proper factual grounds for termination. § 19-3-602(1), C.R.S. (2017). As this case demonstrates, the factual scenarios these articles were intended to address may overlap. When that occurs, the articles merely provide different procedures for termination. They do not, however, require opposite outcomes. Hence, the statutes do not conflict. Accordingly, harmonizing the two statutes is not only unnecessary but also contrary to our statutory interpretation framework. I would instead follow the plain language of Article 5, which permits a termination proceeding under the facts of this case. For these reasons, I respectfully dissent.
¶ 44 When interpreting statutes, "We first look to the language of the statute, giving effect to the plain and ordinary meaning of words and phrases selected by the General Assembly. If statutory language is unambiguous, we apply it as written without resorting to other rules of statutory construction." A.M. v. A.C., 2013 CO 16, ¶ 8, 296 P.3d 1026, 1030 (citations omitted). If the plain language of two statutes conflicts, we harmonize the statutes, if possible. See People v. Steen, 2014 CO 9, ¶ 9, 318 P.3d 487, 490. Courts have found conflicts when statutes state opposite outcomes or prescribe potentially different consequences. See *885 City of Florence v. Pepper, 145 P.3d 654, 657 (Colo. 2006) (finding two statutes "plainly in conflict" when one required the city to bestow workers' compensation benefits on employees and one permitted benefits at the city's discretion); Ortega v. Indus. Comm'n, 682 P.2d 511, 512 (Colo. App. 1984) (finding two statutory subsections in conflict when one permitted unemployment benefits when an employee quit for personal reasons and another denied benefits when an employee quit for personal reasons). Following this framework, I first look to the plain language of section 19-5-105, and I then address whether that plain language conflicts with section 19-3-602 such that harmonizing is necessary.
¶ 45 Section 19-5-105(1) states that when one parent relinquishes parental rights, as the mother did here, the Department "shall file a petition in the juvenile court to terminate the parent-child legal relationship of the other parent."[1] There is no language that even hints that the statute does not apply if an open dependency and neglect case is pending. Thus, when one parent relinquishes parental rights, even if a dependency and neglect case is pending, the plain language of section 19-5-105(1) requires the Department to file a termination petition. There is no justifiable reason to veer from this plain language unless that provision conflicts with another statute.
¶ 46 So the question is whether there is a conflict between section 19-5-105, the relinquishment statute, and section 19-3-602, the dependency and neglect statute, that requires harmonization. In my view, the statutes merely provide for alternative procedures to consider termination. That does not equate to a conflict.
¶ 47 Nevertheless, the majority insists that the two relevant statutes conflict and should be harmonized. See maj. op. ¶ 37. In particular, the majority notes that the purpose and procedure of the two statutes are different, which could lead to parallel proceedings with different procedural requirements. See id. Because of this, the majority reads the "shall file a motion to terminate" language in section 19-5-105(1) to "presume that a termination motion is not already pending," id., a qualification that appears nowhere in the statute or elsewhere in Article 5. This presumption is faulty. The majority does not demonstrate that there is a conflict between the two statutes justifying the presumption's creation, as illustrated by my discussion of each of the majority's points below.
¶ 48 The majority first identifies the unique purposes of Article 3 and Article 5. Article 3, it recognizes, addresses issues with dependent and neglected children. Maj. op. ¶ 16. Article 5 focuses on adoption. Id. at ¶ 17. True enough, but the purpose of the two articles is irrelevant to determining if a conflict exists. Differing purposes do not erase or supersede the plain language in Article 5 permitting termination under certain circumstances. Nor do they create conflict when the plain language reveals none.
¶ 49 The majority then considers the heightened protections available to a parent under an Article 3 termination proceeding as opposed to under Article 5. See id. at ¶¶ 19-32. Proceeding under Article 5, the majority asserts, would allow the Department to evade the detailed and heightened procedures for termination outlined in a dependency and neglect case without a proper basis. Id. at ¶ 36. But there is a proper basis: The plain language of section 19-5-105(1) authorizes that procedure.
¶ 50 Despite the majority's apparent issues with the procedure provided under Article 5, it does not hold that termination under section 19-5-105(1) is an unconstitutional violation of due process-an argument the respondent father here makes. Instead, it appears the majority would simply prefer termination proceedings to proceed under Article 3. A court, however, may not prefer one statutorily authorized procedure over another. Our preferences do not matter. That is the legislature's prerogative.
*886 ¶ 51 Finally, the majority claims that following the plain language of section 19-5-105(1) could result in parallel termination proceedings with different procedural requirements. Id. at ¶ 37. Apparently, in the majority's view, the very fact that there are alternative statutory avenues for termination creates a conflict. But the legislature is well within its authority to enact alternative procedures to adjudicate a motion for termination of parental rights.
¶ 52 At its core, the purpose of harmonizing is to ensure that a party does not end up with two conflicting orders. Notably, the majority does not state that would happen here. In fact, it could not happen. Under the facts of this case, both termination motions would be filed in the same jurisdiction. No judge would permit simultaneous termination hearings even if two separate motions were filed, let alone enter conflicting orders. The only issue would be deciding on which motion to proceed. That is what happened here; though two termination motions were filed, there were not simultaneous proceedings and only one order was entered. It would be the same for any case proceeding under these circumstances. Without demonstrating conflicting outcomes, the majority has not alleged a conflict justifying harmonization.
¶ 53 Contrast our situation with City of Florence v. Pepper. In that case, a volunteer reserve police officer sought workers' compensation benefits from the city for an injury he incurred on the job. 145 P.3d at 655. A statute governing workers' compensation claims gave municipalities the option to include volunteer reserve police officers under the definition of "employee" for workers' compensation purposes. Id. at 655-56. Another statute required municipalities to provide such officers workers' compensation benefits. Id. at 656. We found these two statutes to be "plainly in conflict with one another" because one stated that volunteer reserve police officers were entitled to workers' compensation benefits and the other stated that the governing body had the option of bestowing those benefits. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 657. These are opposite outcomes. That is a conflict. Thus, harmonizing was appropriate.[2]
¶ 54 The same is not true here. Section 19-5-105(1) states that the Department shall file a termination petition when one parent relinquishes rights. Section 19-3-602(1) states that following the adjudication of a child as dependent and neglected, the court shall consider termination of parental rights after the Department files a motion alleging the proper factual grounds. Unlike in Pepper, these two statutes do not demand different outcomes; they simply denote two separate ways the court may consider termination. So there is no conflict and therefore no reason to harmonize.
¶ 55 The plain language, purpose, procedure, and potential outcomes of these two statutes do not create a conflict-neither in theory nor in application. And without conflict, the majority has no justification to use the principles of harmony to justify veering from the plain language of section 19-5-105(1), which permits termination. Hence, there is no justification to prohibit the Department from proceeding with termination under Article 5 in this instance. Therefore, I cannot agree that father's termination proceeded in error. Because of this, I respectfully dissent.
I am authorized to state that JUSTICE COATS joins in this dissent.

While the statute requires the Department to file a termination petition after relinquishment, the proceeding will not necessarily result in termination. The goal is to identify the child's permanent home. The court undertakes a detailed inquiry to identify the other parent and provide him or her the opportunity to be heard; it then determines whether termination, or some other resolution, is appropriate. See § 19-5-105(2) -(4).

The court in Pepper ultimately found these two statutes were irreconcilable and that the earlier statute was repealed by implication. 145 P.3d at 661.