The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 26, 2020

## 2020COA50

**No. 18CA1551,** *Board v. Colorado Department of Public Health and Environment* **— Government — Colorado Governmental Immunity Act — Solid Wastes Disposal Sites and Facilities; Administrative Law — State Administrative Procedures Act; Torts**

In this proceeding, a division of the court of appeals considers whether the Colorado Governmental Immunity Act (CGIA) prevents the Colorado Department of Public Health and Environment (the Department) from bringing an enforcement action against a county under the Solid Waste Disposal Sites and Facilities Act (SWA). The division concludes that the CGIA does not bar the Department's enforcement action because a statutorily authorized public enforcement action to abate hazardous environmental conditions that does not seek compensation for personal injuries or specific property damage is not a tort claim or a claim that could lie in tort.

The division also considers whether the district court erred by holding that (1) the Office of Administrative Courts (OAC) did not err by refusing to certify for interlocutory appeal under C.R.C.P. 54(b) La Plata County Board of Commissioners' (La Plata) argument that a county is not a "person" under the SWA; and (2) La Plata failed to show it would suffer irreparable injury from the OAC's decision. The division concludes that, because section 24-4-106(8), C.R.S. 2019, of the State Administrative Procedure Act governs appeals of nonfinal agency actions, the district court did not need to decide whether the OAC erred by applying Rule 54(b).  Further, the division concludes that La Plata's cross-appeal is moot given the division's holding in the Department's appeal.

Accordingly, the division reverses the district court's decision holding that the CGIA bars the Department's enforcement action and dismisses, in part, La Plata's cross-appeal.

COLORADO COURT OF APPEALS                    **2020COA50**

Court of Appeals No. 18CA1551
La Plata County District Court No. 16CV30152
Honorable Suzanne F. Carlson, Judge

Board of County Commissioners of the County of La Plata, Colorado,

Plaintiff-Appellee and Cross-Appellant,

v.

Colorado Department of Public Health and Environment,

Defendant-Appellant and Cross-Appellee.

JUDGMENT REVERSED AND APPEAL DISMISSED IN PART

Division VII
Opinion by JUDGE FOX
Berger and Lipinsky, JJ., concur

Announced March 26, 2020

Asimakis D. Iatridis, LLC, Maki Iatridis, Boulder, Colorado, for Plaintiff-
Appellee and Cross-Appellant

Philip J. Weiser, Attorney General, David Kreutzer, First Assistant Attorney
General, Lukas Staks, Senior Assistant Attorney General, Denver, Colorado, for
Defendant-Appellant and Cross-Appellee

Nicolas Sarmiento, County Attorney, Conejos, Colorado for Amicus Curiae
Conejos County

¶ 1 The Colorado Department of Public Health and Environment's (the Department) and the Board of County Commissioners of La Plata County's (La Plata) dispute presents an issue of first impression — whether Colorado's Governmental Immunity Act (CGIA) prevents the Department from bringing an enforcement action against a county under the Solid Waste Disposal Sites and Facilities Act (SWA). Because a public enforcement action under the SWA does not and could not lie in tort, we hold that the CGIA does not preclude the Department's SWA enforcement against La Plata. Accordingly, we reverse the district court's ruling on this issue.

¶ 2 La Plata also cross-appeals the district court's denial of its request for interlocutory appeal of the Office of Administrative Court's (OAC) ruling that La Plata is a "person" under the SWA. La Plata also cross-appeals the district court's holding that La Plata did not suffer irreparable injury necessary to review the OAC's ruling under section 24-4-106(8), C.R.S. 2019, of the State Administrative Procedure Act (APA). As explained below, we dismiss La Plata's cross-appeal.

# I. Background

¶ 3    La Plata County owns the Bayfield Landfill (the landfill), a solid waste landfill located in Bayfield, Colorado, and closed since 1994. Since 2004, groundwater monitoring tests at the landfill have shown elevated concentrations of vinyl chloride. The Department and La Plata collaborated to monitor and remediate the contaminated groundwater until 2016, when the Department issued a compliance order to La Plata pursuant to section 30-20-113(2), C.R.S. 2019, because La Plata refused to enter into an administrative order to address the groundwater contamination.

¶ 4    La Plata objected by motion to the compliance order as unnecessary and overly costly. It sought OAC review under the APA raising nine issues, including, as relevant here, that (1) the CGIA grants La Plata immunity from the compliance order (the CGIA defense) and (2) La Plata is not a "person" subject to the SWA (the SWA defense).[1]

---

[1] La Plata raised the CGIA and SWA defenses in a motion to void the unilateral administrative order (UAO). At the administrative phase of the proceedings, the parties referred to the compliance order as the "UAO."

¶ 5    The OAC denied La Plata's motion, holding that the CGIA does not shield La Plata from the compliance order and that La Plata is a "person" subject to the SWA.  The parties filed a joint motion seeking OAC certification of the order for interlocutory appeal under C.R.C.P. 54(b).[2]  The OAC denied the motion.

¶ 6    The parties then filed a joint motion for reconsideration, arguing that the OAC's order on La Plata's motion was not a final order because other issues before the OAC remained unresolved.  The OAC partially granted the motion for reconsideration, clarifying that its order denying La Plata's motion was a final order only regarding the CGIA and SWA defenses.  However, the OAC again denied the parties' request for certification for interlocutory appeal under Rule 54(b).  The OAC stayed further proceedings, including La Plata's challenge to the Department's remedy, pending resolution of La Plata's appeal.

¶ 7    La Plata appealed the OAC's orders, and the district court conducted a bifurcated review to determine if the OAC erred by (1)

---

[2] The rules of procedure for OAC state that, "[t]o the extent practicable, and unless inconsistent with these rules, the Colorado Rules of Civil Procedure apply to matters before the OAC."  Dep't of Pers. and Admin. Rule 15, 1 Code Colo. Regs. 104-1.

refusing to certify for appeal its order denying La Plata's motion and (2) denying La Plata's motion. The district court conducted this two-part review because the parties insisted the first analysis was necessary to determine the appropriate standards of review to apply to the CGIA and SWA defenses in step two.

¶ 8 Applying section 24-4-106(8) of the APA, the district court first determined that the CGIA authorizes interlocutory appeals of governmental immunity claims. Thus, it concluded that whether the OAC certified that issue for interlocutory appeal under Rule 54(b) was irrelevant and that it would review the CGIA defense under section 24-4-106(7), C.R.S. 2019.[3]

¶ 9 However, the district court determined that it would review the OAC's rejection of the SWA defense under section 24-4-106(8), which requires a showing of irreparable injury and agency action that is "clearly beyond the constitutional or statutory jurisdiction or authority of the agency." The district court recognized that, unlike

---

[3] Under section 24-4-106(7), courts may overturn a final agency action if it is arbitrary or capricious, contrary to law, violative of constitutional rights, or an abuse of discretion. However, under section 24-10-106(8), a court may review a nonfinal administrative proceeding if an agency action (1) causes irreparable injury and (2) clearly exceeds statutory or constitutional jurisdiction or authority.

4

the CGIA, the SWA does not allow for immediate appeal. Further, the district court found that La Plata failed to demonstrate under section 24-4-106(8) that the OAC's refusal to certify the SWA defense for interlocutory appeal caused La Plata irreparable injury. Thus, the district court upheld the OAC's refusal to certify for appeal, under Rule 54(b), its decision regarding the SWA defense.

¶ 10 After additional briefing, the district court determined that the CGIA bars enforcement of the compliance order against La Plata because (1) the Department suffered an injury and (2) the compliance order is essentially a public nuisance claim that could lie in tort. However, it did not review the merits of the SWA defense because it concluded that the OAC's rejection of the SWA defense did not cause La Plata irreparable harm under section 24-4-106(8). Finally, the district court awarded La Plata attorney fees as the prevailing party. *See* § 13-17-201, C.R.S. 2019.

## II. The CGIA Defense

¶ 11 The Department argues that the district court erred by holding that the CGIA bars the Department's enforcement of the compliance order against La Plata. Specifically, the Department argues that the district court's order contradicts the plain language and legislative

5

schemes of the SWA and CGIA, and that it forces inconsistent, unharmonious, and nonsensible effects. We agree.

## A. Preservation and Standard of Review

¶ 12 The parties agree that the Department preserved most of its arguments for appeal. However, La Plata asserts that the Department failed to preserve its argument that CGIA immunity only applies in cases where a private person brings a claim against a public entity. We need not consider whether the Department preserved this argument because we reverse the district court's ruling on different grounds.

¶ 13 "A C.R.C.P. 12(b)(1) motion to dismiss on grounds of immunity under the CGIA raises a jurisdictional issue[.]" *Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176, 1180 (Colo. 2001). On appeal, we defer to the district court's factual findings, but where the facts are undisputed, we review de novo the court's jurisdictional ruling. *Walton v. State*, 968 P.2d 636, 643 (Colo. 1998).

¶ 14 We review questions of statutory interpretation de novo. *See Springer v. City & Cty. of Denver*, 13 P.3d 794, 798-99 (Colo. 2000). Our primary purpose when construing a statute is to ascertain and give effect to the General Assembly's intent. *Id.* at 799. We look

6

first to the statute's language, giving words and phrases their plain and ordinary meanings. *Id.* If the statute is unambiguous, we need not conduct any further statutory analysis. *Id.* However, if the statute is ambiguous, we may enlist tools of statutory interpretation to ascertain the legislature's intent. *In re Marriage of Alvis*, 2019 COA 97, ¶ 9. "Those tools include legislative history, prior law, the consequences of a particular construction, and the goal of the statutory scheme." *Id.* A statute is ambiguous if multiple reasonable interpretations are possible. *Andrews v. Miller*, 2019 COA 185, ¶ 21 (citing *Carrera v. People*, 2019 CO 83, ¶ 18).

¶ 15     "Where possible, we interpret conflicting statutes in a manner that harmonizes the statutes and gives meaning to other potentially conflicting statutes." *City of Florence v. Pepper*, 145 P.3d 654, 657 (Colo. 2006). A "statutory scheme is read as a whole 'to give "consistent, harmonious and sensible effect to all of its parts,"' in accordance with the presumption that the legislature intended the entire statute to be effective." *Bryant v. Cmty. Choice Credit Union*, 160 P.3d 266, 274 (Colo. App. 2007) (quoting *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 593 (Colo. 2005)). "A statutory interpretation leading

7

to an illogical or absurd result will not be followed," *Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004), and courts "avoid constructions that are at odds with the legislative scheme," *Bryant*, 160 P.3d at 274.

## B.   The CGIA

¶ 16    Under the CGIA, public entities are immune from liability for all claims for injury that lie in tort or could lie in tort "regardless of whether that may be the type of action or the form of relief chosen by the claimant," unless the claim falls within an exception to that immunity. § 24-10-106(1), C.R.S. 2019.  The form of the complaint is not determinative of the claim's basis in tort. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003 (Colo. 2008).  Instead, a court must consider the nature of the injury and the relief sought. *Id.*

> When the injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law, and when the relief seeks to compensate the plaintiff for that injury, the claim likely lies in tort or could lie in tort for purposes of the CGIA.

*Id.*  "Although the nature of the relief requested is not dispositive on the question of whether a claim lies in tort, the relief requested

8

informs our understanding of the nature of the injury and the duty allegedly breached." *Id.*; *see City of Colo. Springs v. Conners*, 993 P.2d 1167, 1176 (Colo. 2000) ("[A] court must examine the nature of the injury and remedy asserted in each case to determine whether a particular claim is for compensatory relief for personal injuries and is therefore a claim which lies or could lie in tort for the purposes of the CGIA."); *see also Houchin v. Denver Health & Hosp. Auth.*, 2019 COA 50M, ¶ 20 (holding that the CGIA applies to compensatory damages for discrimination under the Colorado Anti-Discrimination Act) (*cert. granted* Feb. 3, 2020).

¶ 17     The CGIA's reach is not limited to claims that are capable of being recast as common law torts by the party bringing the claim. *Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 690 (Colo. 2008). Rather, immunity under the CGIA "broadly encompasses all claims against a public entity arising from the breach of a general duty of care, as distinguished from contractual relations or a distinctly non-tortious statutorily-imposed duty." *Id.* at 691. "[U]ltimately, [the inquiry] turns on the source and nature of the government's liability, or the nature of the duty from the

9

breach of which liability arises." *Id.* at 690 (citing *Robinson*, 179 P.3d at 1003-05).

## C. The SWA

¶ 18    The SWA regulates the management and disposal of solid waste throughout Colorado. § 30-20-100.5, C.R.S. 2019. It grants the Department the power to implement and administer the solid waste program, § 30-20-101.5(1), C.R.S. 2019, including the power to issue orders "requiring that [a] site and facility or person comply with any . . . requirement, rule, or certificate of designation and may request the attorney general to bring suit for injunctive relief or for penalties," § 30-20-113(2)(a), C.R.S. 2019. Any site or facility that violates the SWA "shall be deemed a public nuisance" and "may be enjoined by the department, the board of county commissioners of the county wherein the violation occurred, or the governing body of the municipality wherein the violation occurred." § 30-20-113(3). Under the SWA, a "person" is "an individual, partnership, private or municipal corporation, firm, board of a metropolitan district or sanitation district, or other association of persons." § 30-20-101(3), C.R.S. 2019.

## D. Analysis

¶ 19     The Department first argues that the language and legislative scheme of the SWA give the Department the authority to bring enforcement actions against counties. La Plata disagrees, arguing that counties do not fall within the SWA's definition of "person" and thus cannot be subject to enforcement actions.[4] To the extent the legislature's failure to specifically reference counties in section

---

[4] Although the trial court did not rule on whether the Board is a "person" under the SWA, the issue was (1) presented at the administrative level and to the trial court; (2) ruled on at the administrative level; and (3) fully briefed by both parties in the administrative proceedings, in the trial court, and on appeal. *See* C.A.R. 1(d) (noting that the appellate court "may in its discretion notice any error appearing of record"); *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1008 (Colo. 2008) (recognizing that an appellate court has discretion to notice any error appearing of record, even if not presented to the trial court); *Roberts v. Am. Family Mut. Ins. Co.*, 144 P.3d 546, 549 (Colo. 2006) (recognizing that appellate courts have discretion to consider an unpreserved argument in a civil case); *see also State v. Michielli*, 937 P.2d 587, 592 (Wash. 1997) (supreme court considered application of a rule authorizing dismissal of criminal charges in furtherance of justice, even though parties' supreme court briefs did not address that issue, where the parties argued issue to trial court and court of appeals, but court of appeals majority failed to address issue). Under these circumstances, the parties certainly cannot claim surprise. Moreover, the parties agree that we do not need any facts that are not already in the record to interpret the challenged portion of the SWA. *See, e.g., Anaya v. Indus. Comm'n*, 182 Colo. 244, 247, 512 P.2d 625, 627 (1973) (on a complete record, reviewing constitutional challenge for the first time on appeal); *Robinson v. People*, 173 Colo. 113, 116, 476 P.2d 262, 263 (1970) (reviewing, for the first time on appeal, a due process challenge).

11

30-20-101(3) creates an ambiguity, we consider the rest of the SWA, including its legislative history, and conclude that the General Assembly was aware that counties could be violators of the SWA and therefore subject to enforcement actions brought by the Department.

### 1.    Plain Language

¶ 20    It is true that section 30-20-101(3) does not expressly state that counties are "person[s]," but the definition includes "other association[s] of persons." The parties disagree about whether a county is an "association of persons." The Merriam-Webster dictionary defines an "association" as "an organization of persons having a common interest." Merriam-Webster Dictionary, https://perma.cc/JJM8-FG53. Under this broad definition, a county could qualify as an "association of persons." Black's Law Dictionary defines an "association" as, among other things, "[a] gathering of people for a common purpose" and "[a]n unincorporated organization that is not a legal entity separate from the persons who compose it." Black's Law Dictionary 152-53 (11th ed. 2019). The latter definition in Black's suggests that a county —

12

a legal entity separate from its residents — is not an "association of persons."

¶ 21     But the SWA's definition of "person" includes other governmental entities that are also separate legal entities, such as municipal corporations and boards of metropolitan districts and sanitation districts.  These government entities are not so distinct from counties that counties are necessarily excluded from the scope of "association of persons."  *See Mounkes v. Indus. Claim Appeals Office*, 251 P.3d 485, 488 (Colo. App. 2010) ("[W]hen a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed.").

¶ 22     La Plata, relying on *Industrial Commission v. State Compensation Insurance Fund*, 94 Colo. 194, 29 P.2d 372 (1932), also argues that, because the General Assembly used the word "county" in other sections of the SWA, it did not intend counties to be "person[s]" under section 30-20-101(3).  *Id.* at 196, 29 P.2d at 373-74 (holding that the state was not a "person" or "association of persons" under the Worker's Compensation Act (WCA) because the legislature explicitly defined "employer" to include public employers,

13

such as the state, and private employers, defined as, among other things, "every person" and "association of persons"). While it is true the SWA mentions counties in other sections of the act, we are not convinced that *Industrial Commission,* which deals only with the WCA, requires us to hold that a county is not a "person" under the SWA. Moreover, section 13-20-113(2)(a) grants the Department enforcement authority over not just persons, but also over any "site and facility." While the terms "site" and "facility" are not individually defined, an "appropriate site or facility" is one for which a certificate of designation — as provided in section 30-20-105, C.R.S. 2019 — has been obtained. La Plata County — or its predecessors — had to follow some version of the SWA in order to lawfully operate the landfill.

¶ 23    Even absent the broadly defined "person," the parties do not dispute that the landfill nevertheless qualifies as a facility under the SWA. The SWA states that, whenever the Department finds a facility is in violation of the SWA, it may "issue an order requiring that *the site and facility* or person comply with any such requirement, rule, or certificate of designation." § 30-20-113(2)(a) (emphasis added); *see also* § 30-20-110(1)(b), C.R.S. 2019 (requiring

14

that "sites and facilities shall comply with the health laws, standards, rules, and regulations . . ."). Thus, the plain language of the statute authorizes the Department to issue an order to those who own or operate a facility to comply with the SWA. *See McCool v. Sears*, 186 P.3d 147, 150 (Colo. App. 2008) ("We must give effect to each statutory word and construe the statute as a whole, giving its terms consistent, harmonious, and sensible effect, while avoiding an illogical or absurd result."); *see also* Dep't of Pub. Health and Env't Reg. 1.2, 6 Code Colo. Regs. 1007-2 (defining "operator" and "owner").

¶ 24     Accordingly, we conclude that the SWA's use of the term "association of persons" is susceptible of multiple reasonable interpretations. *See Andrews*, ¶ 21. We next consult the SWA's legislative history to determine if it sheds any light on the Department's power to bring enforcement actions against counties.

## 2.     Legislative History

¶ 25     The General Assembly enacted the SWA in 1967, and the definition of "person" was largely the same as it is today.[5] Ch. 358,

---

[5] The only difference between the original and current definitions is that the original did not include "board of a metropolitan district or

15

sec. 1, § 36-23-1, 1967 Colo. Sess. Laws 759.  The General

Assembly first amended the SWA in 1971, but this amendment

made no changes to the definition of "person."  *See* Ch. 103, sec. 2,

§ 36-23-1, 1971 Colo. Sess. Laws 340.

¶ 26     In 1980, the legislature created an interim committee to

consider revising the SWA in response to the Federal Resource

Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. §§ 6901-

6991 (2018).[6]  That committee published a report in 1980

recommending, among other things, that the General Assembly

"amplif[y]" the definition of "person" to include "governmental unit."

Colorado Legislative Council, Report to the Colorado General

Assembly: Recommendations for 1981 Committee on: Hazardous

---

sanitation district."  *See* Ch. 358, sec. 1, § 36-23-1, 1967 Colo.
Sess. Laws 759.

[6] In 1976, Congress expressed concern over the growing solid waste
disposal problem and recovery of usable materials in the United
States.  As a result, Congress enacted the RCRA, Pub. L. No.
94-580, 90 Stat. 2795 (1976); 42 U.S.C. §§ 6901-6991 (2018).  The
primary objectives of RCRA are to assist states in solid waste
management, address hazardous waste disposal issues, and
promote resource recovery and conservation.  Congress specifically
wished "to promote the protection of health and the environment
and to conserve valuable material and energy resources[.]"  42
U.S.C. § 6902(a) (2018).  Although solid waste management is left to
state government, Congress envisioned that there would be federal
financial and technical assistance through RCRA.

16

Waste, Research Pub. No. 254, at 25 (Dec. 1980). The report also recommended defining "governmental unit" to include counties. *Id.* at 24. However, the General Assembly did not then act on the committee's recommendations.

¶ 27    In 1985, the General Assembly amended the SWA to allow for collection of civil penalties for the illegal dumping of solid waste. Ch. 254, sec. 1, § 30-20-113(2), 1985 Colo. Sess. Laws 1067. When considering this amendment, the General Assembly also contemplated allowing civil penalties for *any* violation of the SWA, not just illegal dumping. In the first version of the bill, the Department would have had the authority to issue compliance orders for all violations of the SWA and collect civil penalties. H.B. 85-1077, 55th Gen. Assemb., 1st Reg. Sess. (as introduced 1985), https://perma.cc/5WBC-QFZA. Collected civil penalties would have been awarded to the counties or municipalities in which violations occurred unless "the county or municipality is responsible for the violation," in which case the penalties would have gone to the state's general fund. *Id.* The General Assembly ultimately removed this language from the bill due to rural counties' concerns about increasing the Department's authority under the

17

SWA. Hearing on H.B. 85-1077 before the S. Comm. on Local Gov't, 55th Gen. Assemb., 1st Sess. (April 3, 1985).

¶ 28 However, in 1998, the General Assembly amended the SWA to allow the Department to issue compliance orders for *any* violation of the SWA without exempting cities, counties, or any other entities. Ch. 236, sec. 11, § 30-20-113, 1998 Colo. Sess. Laws 884-86. Further, in 2009, the General Assembly amended the SWA to increase maximum allowable civil penalties and to authorize the Department to enforce compliance orders through administrative law courts. Ch. 301, sec. 1, § 30-20-113, 2009 Colo. Sess. Laws 1603-07. In four fiscal notes issued in relation to the 2009 bill, the following language appears in addressing the impact of the amendments on local governments:

> Municipalities and counties may have increased revenue from penalties assessed for violations of solid waste disposal. In addition, local government-owned waste facilities would be subject to increased penalties should they violate [the Department's] compliance orders.

*E.g.*, Colo. Legislative Council Staff, Final Fiscal Note Concerning Increased Penalty Authority for the Department of Public Health

18

and Environment for Violations of Solid Waste Disposal Laws 2 (June 10, 2009), https://perma.cc/RHH2-3AK9.[7]

¶ 29    Accordingly, we conclude that the General Assembly's increase of the Department's authority under the SWA over time — as also reflected in the language contained in the 2009 fiscal notes — demonstrates the General Assembly's intent that the Department have the power to bring enforcement actions against waste-facilities owned or operated by cities or counties.  While the General Assembly never amended the definition of "person" under the SWA to include counties expressly, its subsequent amendments and related notes show the General Assembly recognized that counties and other governmental units are subject to enforcement actions under the SWA.[8]  *See id.*  A different interpretation of "person"

---

[7] We fully recognize that fiscal notes do not have the full weight of a legislative act, as they are not drafted by legislators, are not subject to vote, and are not part of the bill.  However, to the extent they provide a glimpse into what was known at the time the amendment was being considered, they are helpful to use as we try to discern the General Assembly's knowledge and intent.  *See, e.g., People in Interest of G.M.*, 844 P.2d 1341, 1344 (Colo. App. 1992) (considering fiscal notes in determining the General Assembly's intent regarding amendments to the Children's Code).

[8] Even the federal government is not immune from federally authorized state enforcement actions.  *See, e.g., United States v. Colorado*, 990 F.2d 1565, 1579 (10th Cir. 1993).

would create an absurd result by allowing counties to avoid complying with the SWA and to evade oversight by the Department. *See Frasier*, 90 P.3d at 811.

### 3. Immunity Under the CGIA

¶ 30    Having determined that the Department can bring enforcement actions against counties under the SWA, we now consider if the CGIA nonetheless bars the Department's enforcement actions against counties. The Department argues that (1) the compliance order does not allege — and the Department has not suffered — an injury and (2) the compliance order does not bring a claim that lies or could lie in tort. Because the compliance order is a public enforcement action that does not and could not lie in tort, we agree with the Department.

### a. Does the Compliance Order Allege an Injury?

¶ 31    "The CGIA applies when (1) the complaint alleges an injury and (2) the claim lies in tort or could lie in tort." *Open Door Ministries v. Lipschuetz*, 2016 CO 37M, ¶ 15. Section 24-10-103(2), C.R.S. 2019, of the CGIA defines "injury" as "death, injury to a person, damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort

20

regardless of whether that may be the type of action or the form of relief chosen by a claimant." "The nature of the injury alleged — not the relief requested — is the primary inquiry to determine whether the CGIA applies to the claim." *Open Door*, ¶ 16.

¶ 32    The district court concluded that the mere existence of elevated levels of vinyl chloride in the groundwater constituted an injury under the CGIA. Specifically, the district court reasoned that a private party would have a claim for injury if the pollution had been detected in groundwater used for a domestic well. Thus, the district court concluded that the Department must "have some colorable claim for injury when groundwater belonging to the public is similarly contaminated."

¶ 33    Even assuming that there is an injury, we conclude that the Department's enforcement action via the compliance order does not bring a claim that lies or could lie in tort.

b.    The Compliance Order Does Not Bring Claims that Lie or Could Lie in Tort

¶ 34    Even if the State or the Department suffered an injury here, the Department asserts that its compliance order does not bring a claim that lies or could lie in tort. The Department argues the

21

compliance order is a regulatory enforcement action based in the state's police powers that (1) does not impose a duty or (2) imposes a nontortious statutory duty. Because enforcement actions under the SWA are public actions that do not seek to compensate the state for personal injuries or specific property damage, we hold that the compliance order does not bring claims that lie or could lie in tort.[9]

¶ 35    In *City of Colorado Springs v. Connors*, the Colorado Supreme Court held that the CGIA does not bar claims against public entities

---

[9] In addition to common law theories, federal laws establish liability for injury to natural resources and authorize Colorado's Natural Resource Trustees (Trustees) to act on behalf of the public and recover damages for the restoration of those injured resources. *See, e.g.*, Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601(6), 9607(a), 9607(f)(2)(B), and 9611(b) (2018); Oil Pollution Act of 1990 (OPA), 33 U.S.C. §§ 2701-2719 (2018); Clean Water Act (CWA), 33 U.S.C. §§ 1251-1387 (2018). Colorado's Attorney General, the Executive Director of the Colorado Department of Public Health and Environment, and the Executive Director of the Department of Natural Resources — or their delegates — serve as the Trustees. They act on behalf of the public when Colorado's natural resources are injured or destroyed as a result of an oil spill or release of hazardous substances. *See, e.g., Colo. Dep't of Public Health & Env't v. United States*, 381 F. Supp. 3d 1300, 1305 (D. Colo. 2019); Complaint at ¶ 5, *United States v. Suncor Energy USA Inc.*, 2013 WL 6042392 (D. Colo. Nov. 15, 2013) (No. 1:13-cv-3109). The Department's enforcement activities here do not seek natural resource damages.

22

for restitution and back pay under the Colorado anti-discrimination statutes. 993 P.2d at 1173-74. Considering the nature of the plaintiff's injury and the relief sought, the court reasoned that the plaintiff's discrimination claims could not lie in tort because they were equitable in nature and did not seek to compensate the plaintiff for personal injuries. *Id.* at 1175. Later cases have limited the scope of this holding, stating that "the nature of the relief is not dispositive as to the question of whether a claim lies in tort." *Robinson*, 179 P.3d at 1006; *see also Brown Grp.*, 182 P.3d at 691 ("[W]e have never suggested that claims for relief developed and historically administered by courts of chancery or equity, rather than courts of law, necessarily fall outside the coverage of the [CGIA].").

¶ 36   In *Colorado Department of Transportation v. Brown Group Retail, Inc.*, the Colorado Supreme Court stated that the CGIA "encompasses all claims against a public entity arising from the breach of a general duty of care, as distinguished from contractual relations or a distinctly non-tortious statutorily-imposed duty." 182 P.3d at 691. Nontortious statutory duties are distinct from general duties of care because the former seek to implement broad policy

23

while the latter primarily seek to compensate individuals for personal injuries. *See id.*; *see also Robinson*, 179 P.3d at 1006-07. The court in *Brown Group* later raised the possibility that the state's hazardous waste statutes might create a nontortious statutory duty but declined to decide that issue. 182 P.3d at 691.

¶ 37    We conclude that the SWA imposes a nontortious statutory duty on solid waste facility operators to comply with the substantive provisions of the SWA. *See* § 30-20-113. Like the civil rights statute in *Connors*, which the legislature intended to address "constitutionally based concerns of equality rather than mere compensation for personal injury," *Robinson*, 179 P.3d at 1006-07 (discussing *Connors*), the SWA was not designed to compensate individual claimants. Rather, it seeks to redress solid waste management practices that impose "significant public health risks, environmental hazards, and long-term liability for the citizens of the state." § 30-20-100.5(1)(b); *see also Connors*, 993 P.2d at 1173-74. And while the SWA authorizes the Department to seek injunctions and administrative or civil penalties for violations of the act, *see* § 30-20-113(b)(I), these remedies are equitable and punitive, respectively, and do not seek compensation for personal injuries or

24

specific property damage, *see Robinson,* 179 P.3d at 1006 (holding that the relief requested is "an aid in understanding the duty breached or the injury caused to determine if the claim lies or could lie in tort"); *see also C.K. v. People,* 2017 CO 111, ¶ 16 (holding that an award of attorney fees for failure to comply with discovery rules was a punitive sanction and not a tort under the CGIA).

¶ 38    La Plata argues that the SWA creates a duty in tort because, unlike the civil rights employment claim in *Connors,* enforcement actions under the SWA have their origin in common law public nuisance. Specifically, La Plata argues that the SWA codifies common law public nuisance claims that the Department, counties, and municipalities can bring against private solid waste facility operators.

¶ 39    We acknowledge that the SWA states that solid waste facilities that violate the act "shall be deemed a public nuisance," § 30-20-113(3), and that some authorities consider public nuisance claims to be torts. *See, e.g.,* Restatement (Second) of Torts § 821B, Westlaw (database updated Oct. 2019). But a statutorily authorized public enforcement action to abate hazardous environmental conditions that does not seek compensation for personal injuries or

25

specific property damage is not a tort. *See Hoery v. United States*, 64 P.3d 214, 215 n.5 (Colo. 2003) (defining private nuisance as a tort and public nuisance as an "invasion of public rights"); *see also Smillie v. Cont'l Oil Co.*, 127 F. Supp. 508, 510 (D. Colo. 1954) (applying Colorado law and explaining the difference between an invasion of personal rights and a nuisance); *Freeman v. Grain Processing Corp.*, 848 N.W.2d 58, 84 (Iowa 2014) (recognizing "common law and nuisance actions have a different purpose than the regulatory regime established by the Clean Air Act"); Thomas W. Merrill, *Is Public Nuisance A Tort?*, 4 J. Tort L. 1, 6 (2011) (distinguishing "public actions" from "torts" and arguing that public nuisance claims are public actions, not torts). Torts generally seek to enforce private rights, but the compliance order in this case seeks to enforce the rights of the general public. *See* Merrill, 4 J. Tort L. at 8 ("Tort actions, as generally understood, are nearly always designed to protect private rights, not rights of the general public.").

¶ 40    Our holding is consistent with the legislature's intent expressed in Part II.B that the Department have the power to bring enforcement actions against counties. To hold otherwise would

26

prevent the Department from enforcing the provisions of the SWA on publicly maintained solid waste facilities, which make up most of the solid waste facilities in Colorado. *See Pepper*, 145 P.3d at 657 ("[W]e interpret conflicting statutes in a manner that harmonizes [them].").

¶ 41 Accordingly, we conclude that the district court erred by holding that the compliance order was a claim that lies or could lie in tort and that the CGIA stands as an obstacle to SWA enforcement. *See Connors*, 993 P.2d at 1177.

### III. Cross-Appeal

¶ 42 La Plata argues that the district court's June 20, 2017, order erroneously held that La Plata's CGIA defense qualified for automatic interlocutory appeal but its SWA defense did not. Specifically, La Plata argues that, because the district court held the CGIA defense qualified for interlocutory appeal, the SWA defense should have qualified as well. Further, La Plata objects to the district court's application of section 24-4-106(8) in its July 9, 2018, order, which held that La Plata failed to show it would suffer irreparable injury from the OAC's rejection of the SWA defense.

Because La Plata's cross-appeal is moot given our holding in the Department's appeal, we dismiss it.

### A. Applicable Law and Standard of Review

¶ 43    Generally, appellate courts only have jurisdiction over appeals from final judgments. § 13-4-102(1), C.R.S. 2019; *Allison v. Engel*, 2017 COA 43, ¶ 23. However, Rule 54(b) allows a trial court to enter a final judgment on one or more claims in a multiple-claim case, thus permitting immediate appeal of those judgments under certain circumstances.[10] *Allison*, ¶ 1. A trial court may certify a case for appeal pursuant to Rule 54(b) if the court (1) rules on an entire claim for relief; (2) ultimately disposes of the claim; and (3) expressly determines that there is no just reason to delay an appeal on the ruling. *Galindo v. Valley View Ass'n*, 2017 COA 78, ¶ 8.

¶ 44    We review de novo the legal sufficiency of a district court's Rule 54(b) certification. *Allison*, ¶ 25. However, we review a district court's determination regarding whether there is just reason to delay certification under C.R.C.P. 54(b) for an abuse of discretion.

---

[10] Except for C.R.C.P. 16, C.R.S. 2019, and the filing deadlines for motions for summary judgment under C.R.C.P. 56(c), C.R.S. 2019, the Colorado Rules of Civil Procedure apply to matters before the OAC. Dep't of Pers. and Admin. Rule 15, 1 Code Colo. Regs. 104-1.

28

*Id.* (citing *Lytle v. Kite*, 728 P.2d 305, 308 (Colo. 1986)). A district court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, unfair, or based on an erroneous view of the law. *Id.*

¶ 45 Because this case involves administrative proceedings, we must also consider the APA, sections 24-4-101 to -108, C.R.S. 2019. Under the APA, only final agency actions are subject to judicial review. § 24-4-106(2). Courts review final agency actions under section 24-4-106(7), which allows a court to overturn a final agency action if it was arbitrary or capricious, contrary to law, violative of constitutional rights, or an abuse of discretion. However, under limited circumstances, a court may intervene in ongoing administrative proceedings if an agency action (1) causes irreparable injury and (2) clearly exceeds statutory or constitutional jurisdiction or authority. § 24-4-106(8); *Envirotest Sys., Corp. v. Colo. Dep't of Revenue*, 109 P.3d 142, 144 (Colo. 2005).

¶ 46 When a court rule and a statute conflict, we consider whether the affected matter is "procedural" or "substantive." *People v. G.S.*, 2018 CO 31, ¶ 32 (citing *Borer v. Lewis*, 91 P.3d 375, 380-81 (Colo. 2004); *People v. Wiedemer*, 852 P.2d 424, 436 (Colo. 1993)). If an affected matter is procedural, the court rule controls; if the matter

29

is substantive, the statute controls. *Id.* "[R]ules adopted to permit the courts to function and function efficiently are procedural whereas matters of public policy are substantive and are therefore appropriate subjects for legislation." *Id.* (quoting *Wiedemer*, 852 P.2d at 436).

## B. Analysis

¶ 47 The district court's June 20, 2017, order considered whether the OAC erred by denying the parties' joint motion under Rule 54(b) for certification of the OAC's order denying La Plata's motion. The district court ruled that, under section 24-10-108, La Plata could immediately appeal the CGIA defense as a final judgment.[11] Specifically, the district court concluded that Rule 54(b) certification is unnecessary for orders regarding governmental immunity because all decisions regarding government immunity are final judgments. Further, because the OAC's decision regarding the CGIA defense was final and thus immediately appealable, the district court did not consider — and need not have considered —

---

[11] Section 24-10-108 states that any decision on a motion regarding governmental immunity "shall be a final judgment and shall be subject to interlocutory appeal."

30

whether the OAC erred by denying Rule 54(b) certification for the CGIA defense under section 24-4-106(8).

¶ 48     The district court next considered if the OAC erred by denying Rule 54(b) certification to the SWA defense. However, the district's court analysis of this issue was unnecessary because whether the OAC erred in applying Rule 54(b) to the SWA defense for appeal is irrelevant.

¶ 49     Section 24-4-106(8) governs appeals of nonfinal agency actions, and the OAC's decision regarding the SWA defense was a nonfinal action. Section 24-4-106(8) reflects a legislative policy judgment that appeals of nonfinal agency actions meet a higher standard of review than ordinary civil interlocutory appeals under Rule 54(b). *See State ex rel. Meyer v. Ranum High Sch.*, 895 P.2d 1144, 1145 (Colo. App. 1995) (holding that the statutory injunction standard in section 1-45-113(2)(c), C.R.S. 1994, of the Campaign Reform Act, which mandated injunctions against violators of the act, controlled over C.R.C.P. 65, which requires a showing of irreparable harm). Thus, regardless of certification under Rule 54(b), the APA allowed the district court to consider the SWA defense under section 24-4-106(8). *See G.S.*, ¶ 32.

31

¶ 50     In any event, La Plata's objections regarding the SWA defense are now moot.  To resolve the Department's appeal, we had to consider, de novo, whether the SWA allows the Department to bring enforcement actions against counties.  Having concluded that the SWA allows such actions — and that the CGIA does not stand as an obstacle — our holding renders La Plata's attempt to appeal the SWA defense — that counties are not "person[s]" under the SWA — moot.  *See Bd. of Cty. Comm'rs v. Crystal Creek Homeowners Ass'n*, 14 P.3d 325, 329 (Colo. 2000) ("[O]ur holding in the appeal renders the cross-appeal . . . moot.").

¶ 51     Accordingly, we dismiss La Plata's appeal challenging the district court's June 20, 2017, order and the operative portions of the July 9, 2018, order.  *See Crystal Creek*, 14 P.3d at 329; *Ranum High Sch.*, 895 P.2d at 1145.

## IV.   Attorney Fees

¶ 52     In their respective appeals, the parties dispute whether La Plata is entitled to attorney fees under section 13-17-201.  We previously dismissed this portion of the appeal without prejudice for lack of subject matter jurisdiction.  *Bd. of Cty. Comm'rs v. Colo. Dep't of Pub. Health*, (Colo. App. No. 18CA1551, Mar. 4, 2019)

32

(unpublished order). We address the issue of attorney fees in a separate opinion in *Board of County Commissioners v. Colorado Department of Public Health*, (Colo. App. No. 19CA410, Mar. 26, 2020) (not published pursuant to C.A.R. 35(f)).

## V. Conclusion

¶ 53    The district court's judgment is reversed and La Plata's cross-appeal is dismissed in part.

JUDGE BERGER and JUDGE LIPINSKY concur.