The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 17, 2022

**2022COA132**

**No. 21CA1242, *Anschutz v. Department of Revenue* — Taxation — Colorado Income Tax Act of 1987 — Federal Taxable Income — Coronavirus Aid, Relief, and Economic Security (CARES) Act**

A division of the court of appeals holds as a matter of first impression that the state income tax code incorporates retrospective changes to federal tax law in the calculation of taxable income.

Court of Appeals No. 21CA1242
City and County of Denver District Court No. 21CV31103
Honorable J. Eric Elliff, Judge

Philip Anschutz and Nancy Anschutz,

Plaintiffs-Appellants,

v.

Colorado Department of Revenue of the State of Colorado, and Mark
Ferrandino, in his official capacity as Executive Director of the Colorado
Department of Revenue,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE TOW
Fox and Yun, JJ., concur

Announced November 17, 2022

Lewis Roca Rothgerber Christie LLP, James M. Lyons, Frederick J. Baumann,
Kenneth F. Rossman, IV, Denver, Colorado, for Plaintiffs-Appellants

Philip J. Weiser, Attorney General, Russell Johnson, Senior Assistant Attorney
General, Emma Garrison, Assistant Attorney General, Denver, Colorado, for
Defendants-Appellees

¶ 1       The Colorado Constitution permits the General Assembly to define taxable income for state income tax purposes by reference to federal taxable income pursuant to federal tax law.  Colo. Const. art. X, § 19.  The General Assembly has explicitly done so in the Colorado Income Tax Act of 1987 (state income tax code). §§ 39-22-101 to -5304, C.R.S. 2022.

¶ 2       The question this appeal presents — one never before addressed by a Colorado appellate court — is whether a congressional amendment to federal income tax laws that lowers a taxpayer's federal taxable income for prior tax years entitles a Colorado taxpayer to file an otherwise timely amendment to their state income tax return for those prior years in order to claim a refund.

¶ 3       Philip and Nancy Anschutz (the Anschutzes) say it does and filed an amended 2018 state income tax return to take advantage of just such a change to federal law.  The Colorado Department of Revenue and its Executive Director, Mark Ferrandino (collectively, the Department) say it does not and denied the refund.  When the Anschutzes appealed the denial pursuant to section 39-21-105,

1

C.R.S. 2022, the district court agreed with the Department and granted the Department's C.R.C.P. 12(b)(5) motion to dismiss.

¶ 4    Because we agree with the Anschutzes, we reverse the district court's judgment dismissing the Anschutzes' claim and remand for further proceedings.

## I.    Legal Background

¶ 5    A Colorado taxpayer's state income tax liability begins with their "federal taxable income, as determined pursuant to section 63 of the internal revenue code." § 39-22-104(1.7), C.R.S. 2022. That figure is then adjusted by certain additions and subtractions to arrive at the final taxable income. § 39-22-104(2)-(4). That adjusted amount is then multiplied by the statutory tax rate to determine the amount of tax owed. § 39-22-104(1.7).

¶ 6    The state income tax code defines "internal revenue code" as "the provisions of the federal 'Internal Revenue Code of 1986,' as amended, and other provisions of the laws of the United States relating to federal income taxes, as the same may become effective at any time or from time to time, for the taxable year."

§ 39-22-103(5.3), C.R.S. 2022 (footnote omitted).[1]  The state income tax code further provides that "[a]ny term used in this article, except as otherwise expressly provided or clearly appearing from the context, shall have the same meaning as when used in a comparable context in the internal revenue code, as amended, in effect for the taxable period."  § 39-22-103(11).[2]

¶ 7    On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  Pub. L. No. 116-136, 134 Stat. 281 (2020).  The CARES Act modified several provisions of the IRC, including amending 26 U.S.C. § 461($l$) to suspend the "excess business loss"[3] deduction limits for the 2018 through 2020

---

[1] Because the state income tax code's use of the term "internal revenue code" encompasses more than just the federal Internal Revenue Code, we distinguish between the two by referring to the federal Internal Revenue Code of 1986 as the IRC.

[2] This approach to state income taxation is known as "rolling conformity," meaning a state "essentially incorporates all the new federal provisions into its state tax code automatically."  Andrew Appleby, *Designing the Tax Supermajority Requirement*, 71 Syracuse L. Rev. 959, 1001 (2021).

[3] "Excess business loss" means the excess (if any) of the aggregate deductions of the taxpayer attributable to trades or businesses of such taxpayer, over the sum of the aggregate gross income or gain of the taxpayer attributable to those trades or businesses plus $250,000 (or $500,000 in the case of a joint return).  26 U.S.C. § 461($l$)(3).

tax years, allowing taxpayers with losses in excess of the threshold to claim the entirety of the loss. CARES Act § 2304, 134 Stat. at 356. In other words, for taxpayers who had such losses, the CARES Act provisions retroactively reduced their federal taxable income for tax years 2018 and 2019.[4]

¶ 8 In June 2020, the Department adopted Emergency Rule 39-22-103(5.3). *See* Dep't of Revenue Rule 39-22-103(5.3), 1 Code Colo. Regs. 201-2 (effective June 2, 2020-Sept. 29, 2020) (Emergency Rule). The Emergency Rule was replaced with a permanent rule effective September 30, 2020. *See* Dep't of Revenue Rule 39-22-103(5.3), 1 Code Colo. Regs. 201-2 (effective Sept. 30, 2020). (Though the pertinent language of the rules is identical, we reference the Emergency Rule because it was in effect when the Department denied the Anschutzes' refund claim.) The Emergency Rule states:

> "Internal revenue code" does not, for any taxable year, incorporate federal statutory changes that are enacted after the last day of that taxable year. As a result, federal statutory changes enacted after the end of a taxable year do not impact a taxpayer's

---

[4] Such taxpayers' federal taxable income would also be reduced for the 2020 tax year, but that is not relevant to this case.

> Colorado tax liability for that taxable year. Changes to federal statutes are incorporated into the term "internal revenue code" only to the extent they are in effect in the taxable year in which they were enacted and further taxable years.

*Id.*[5]

¶ 9    At around the same time, the General Assembly enacted section 39-22-104(3)(*l*)-(n), which prevents taxpayers from using certain CARES Act provisions in calculating their Colorado taxable income for tax years beginning after the enactment of the CARES Act and before January 1, 2021.  Ch. 277, sec. 2, § 39-22-104(3)(*l*)-(n), 2020 Colo. Sess. Laws 1358-59.[6]  This amendment requires taxpayers, in calculating their Colorado taxable income, to include the amount that their federal taxable income had been reduced by the CARES Act provisions.  *Id.* Specifically, when calculating their taxable income for state tax purposes, taxpayers must now add back to their taxable income the

---

[5] In December 2020, the Office of Legislative Legal Services issued a memorandum stating that the Department's interpretation of "internal revenue code" conflicted with the unambiguous language in section 39-22-103(5.3), C.R.S. 2022, and thus recommended against extending the rule.

[6] The bill became effective when the Governor signed it on July 11, 2020.  Ch. 277, sec. 8, 2020 Colo. Sess. Laws 1361.

amount by which their federal taxable income was reduced by any "excess business loss."  *Id.* § 39-22-104(3)(m), 2020 Colo. Sess. Laws at 1359.  However, this provision only applies to taxable income for tax years ending after the enactment of the CARES Act but before January 1, 2021.  *Id.*[7]

## II.    The Anschutzes' Amended Tax Return

¶ 10    In April 2020, in the wake of the passage of the CARES Act and before the General Assembly amended the state income tax code, the Anschutzes filed amended federal and Colorado income tax returns for the 2018 tax year, claiming the entirety of their "excess business loss" and seeking income tax refunds.

¶ 11    In September 2020, the Department rejected the Anschutzes' state income tax refund claim, citing the Emergency Rule.  The Anschutzes appealed the denial of their refund claim to the district

---

[7] The General Assembly further amended the state income tax code the following year by providing that, for tax years beginning in 2021, taxpayers could subtract up to $300,000 of excess business losses and could carry over up to $150,000 per year in excess business loss from the 2021 tax year for up to the next four tax years.  Ch. 5, sec. 1, § 39-22-104(4)(z), 2021 Colo. Sess. Laws 30-31.  By its terms, this amendment applies only to taxable income in tax years beginning in 2021, *see id.* § 39-22-104(4)(z)(I), 2021 Colo. Sess. Laws at 30, and thus, like the 2020 amendment, has no bearing on the Anschutzes' amended 2018 tax return.

6

court, asserting a claim for allowance of their 2018 tax year refund and, among others, a claim for a declaratory judgment that "[w]hen Congress passed the CARES Act, the tax provisions included therein were immediately incorporated into Colorado tax law pursuant to Colorado statute."[8] The Department moved to dismiss the complaint for failure to state a claim. The district court granted the motion to dismiss, concluding that section 39-22-103(5.3) is ambiguous, and that the Department's interpretation was reasonable, consistent with the General Assembly's later amendments to the statute, and entitled to deference.

## III.  Analysis

¶ 12    The parties disagree about how to interpret the definition of internal revenue code in section 39-22-103(5.3): "the provisions of the [IRC], as amended, and other provisions of the laws of the United States relating to federal income taxes, as the same may

---

[8] The Anschutzes also sought a declaratory judgment that the Emergency Rule was invalid. The district court concluded that their request was untimely and that it did not have jurisdiction to set aside the rule. The Anschutzes did not appeal the district court's order in this regard.

become effective at any time or from time to time, for the taxable year." (Footnote omitted.)

## A. Standard of Review

¶ 13  We review de novo a district court's grant of a C.R.C.P. 12(b)(5) motion to dismiss. *Wagner v. Grange Ins. Ass'n*, 166 P.3d 304, 307 (Colo. App. 2007). "Questions of statutory interpretation are also subject to de novo review." *Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 12.

¶ 14  "When interpreting a statute, our primary aim is to effectuate the legislature's intent." *Id.* We look to the entire statutory scheme to give consistent, harmonious, and sensible effect to all parts and apply words and phrases in accordance with their plain and ordinary meaning. *Id.* "[W]here the plain language is unambiguous, we apply the statute as written." *Id.*

¶ 15  We may consider and even defer to an agency's interpretation of the statute. *BP Am. Prod. Co. v. Colo. Dep't of Revenue*, 2016 CO 23, ¶ 15. Deference to the agency is only warranted, however, when a statute "is subject to different reasonable interpretations and the issue comes within the administrative agency's special expertise." *Huddleston v. Grand Cnty. Bd. of Equalization*, 913 P.2d 15, 17

(Colo. 1996). Deference is not warranted where the agency's interpretation is contrary to the statute's plain language. *BP Am. Prod.*, ¶ 15.

### B. Interpretation of the State Income Tax Code

¶ 16 The Anschutzes contend that the statutory definition of internal revenue code automatically incorporates congressional amendments to the IRC, even if such changes relate to previous tax years. The Department contends that the definition of internal revenue code only incorporates amendments to the IRC to the extent that they are in effect for the taxable year in which they were enacted and for future taxable years.

¶ 17 Based on the plain language of the state income tax code, we agree with the Anschutzes' interpretation.

### 1. Plain Language

¶ 18 Given the grammatical structure of the statutory language, there are two types of federal statutory provisions that make up the definition of internal revenue code: (1) those found in the IRC "as amended" and (2) those found elsewhere in the laws of the United States to the extent they relate to federal income taxes. § 39-22-103(5.3). However, both provisions are modified by the

9

phrase "for the taxable year." *Id.*; *see also People v. Lovato*, 2014 COA 113, ¶ 24 (Under the series-qualifier canon of statutory construction, "when several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." (quoting *In re Estate of Pawlik*, 845 N.W.2d 249, 252 (Minn. Ct. App. 2014))).

¶ 19     Section 39-22-103(5.3) plainly and unambiguously states that the phrase "internal revenue code" includes "the provisions of the [IRC], as amended, . . . for the taxable year," without any limitation as to when any amendment is enacted or goes into effect. *See Nieto*, ¶ 22 ("[J]ust as important as what the statute says is what the statute does not say." (quoting *Mook v. Bd. of Cnty. Comm'rs*, 2020 CO 12, ¶ 35)).  Thus, a taxpayer can take advantage of any amendment that is in effect *for* (not just *in*) a taxable year.  Because there is no other reasonable interpretation — notwithstanding the parties' disagreement — we perceive no ambiguity.  *See Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 825 (Colo. 2008) (concluding that the plain meaning of the statute was clear despite the parties' disagreement).

¶ 20    The Department contends that because the General Assembly used different phrases — "as amended" and "at any time or from time to time" — in describing the two types of federal statutory provisions included in the definition of internal revenue code, the use of "as amended" must signal a narrower scope than "at any time or from time to time." Thus, the Department argues, the "[IRC], as amended," means the federal statute as it exists to the end of the relevant tax year, but not beyond.

¶ 21    But the Department misses a simpler explanation for the use of different phrases. Because the IRC is already in existence it can be "amended," whereas "other provisions of the laws of the United States relating to federal income taxes, as the same may become effective" are not necessarily in existence yet. Such provisions are not "amended" but, rather, "become effective" upon enactment, which may occur "at any time or from time to time." Thus, the plain language of the statute contradicts the Department's interpretation.

¶ 22    Nor are we persuaded by the Department's reliance on the statutory presumption of prospective application. To the extent the Department is suggesting the amendment to the *federal* statute

should be presumptively prospective, that suggestion directly conflicts with Congress's language making the CARES Act provisions applicable to prior tax years. To the extent the Department's argument is directed at an amendment to the *state* statute, it is misplaced because the CARES Act did not (and could not) amend Colorado law. Rather, the effect of the congressional amendment flows from the existing state income tax code language (and its incorporation by reference to the IRC "as amended").[9]

### 2. Legislative Declaration

¶ 23 We also disagree with the Department's contention that the Anschutzes' interpretation of section 39-22-103(5.3) is contrary to the legislative declaration in the state income tax code.

¶ 24 The legislative declaration states that one purpose of the act includes "[s]implifying the preparation of state income tax returns." § 39-22-102(1)(a), C.R.S. 2022.

¶ 25 The Department contends that because the Anschutzes had to file an amended state income tax return, the act did not simplify the

---

[9] Notably, the Colorado Constitution expressly permits state income taxes to be calculated "by reference to provisions of the laws of the United States . . . , *whether retrospective or prospective in their operation.*" Colo. Const. art. X, § 19 (emphasis added).

12

preparation of the return. But an interpretation of the statute that requires taxpayers to take their federal taxable income, as calculated under federal law, and then determine which, if any, amendments to the IRC must be incorporated for purposes of determining their state taxable income, depending on the date of their enactment, creates complexity contrary to the legislative declaration. *Cf. Ball Corp. v. Fisher*, 51 P.3d 1053, 1058 (Colo. App. 2001) ("When Colorado's tax provisions have counterparts at the federal level, incorporating amendments to the federal tax code simplifies compliance and enforcement under the Colorado tax code.").

¶ 26     By automatically incorporating amendments to the IRC into the state income tax code, a taxpayer's preparation of state income tax returns is simplified. And if a taxpayer needs to file an amended federal income tax return, it does not complicate the preparation of any amended state income tax return, but rather simplifies it by allowing both amended returns to be filed at the same time and based on the same amendments to the determination of taxable income.

### 3. The Emergency Rule

¶ 27 Nor does the Emergency Rule provide the Department safe harbor. The Emergency Rule specified that changes to federal tax law only apply prospectively. Dep't of Revenue Rule 39-22-103(5.3), 1 Code Colo. Regs. 201-2. But the language that the Department used in its Emergency Rule did not appear in the plain language of the state income tax code as it existed before the amendment that became effective in July 2020. *See* Ch. 277, sec. 2, § 39-22-104(3)(*l*)-(n), 2020 Colo. Sess. Laws 1358-59. Indeed, had the statute provided for prospective application only, the Department would not have had to issue the Emergency Rule. The Department stated in the Rule that "[t]he purpose of [the Emergency Rule] is to clarify that the term 'internal revenue code' incorporates changes to federal statute only on a prospective basis." Dep't of Revenue Rule 39-22-103(5.3), 1 Code Colo. Regs. 201-2. But this was more than a clarification — it read words into the statute that were not there.

¶ 28 Because the Emergency Rule's interpretation of "internal revenue code" is contrary to the statute's plain language, and we decline to defer to it. *See Ansel v. Dep't of Hum. Servs.*, 2020 COA

172M, ¶ 39 (concluding that agency interpretation of the statute was inconsistent with the plain language and was contrary to law).

### 4. Legislative Amendment to Section 39-22-104

¶ 29     The Department argues (and the district court agreed) that the fact that the General Assembly later amended section 39-22-104 supports its interpretation.  We disagree.

¶ 30     First, as noted, the 2020 and 2021 amendments expressly apply only to later tax years.  Thus, they do not impact the Anschutzes' amended 2018 tax return.

¶ 31     Nevertheless, the Department asserts that the fiscal note to the 2020 bill indicated that the statutory language was simply a recognition of existing law as set forth in the Emergency Rule. Fiscal notes can, in some circumstances, be helpful in gleaning legislative intent "to the extent they provide a glimpse into what was known at the time the amendment was being considered."  *Bd. of Cnty. Comm'rs v. Colo. Dep't of Pub. Health & Env't*, 2020 COA 50, ¶ 28 n.7, *aff'd in part and vacated in part on other grounds*, 2021 CO 43.  First, having concluded that the statutory language is unambiguous, we do not resort to external aids to determine the meaning of the statute.  *People v. J.J.H.*, 17 P.3d 159, 162 (Colo.

2001).  In any event, the probative value of this particular fiscal note statement is suspect, particularly in light of the fact that the General Assembly's own Office of Legislative Legal Services has opined in a memorandum that the Emergency Rule conflicted with the operative statutory language.

¶ 32     Even assuming that the fiscal note and the legislative amendment to section 39-22-104 endorsed the Department's Emergency Rule, as we have noted, the Emergency Rule was contrary to the plain language of the statute then in effect.  The General Assembly can, of course, amend the state income tax code to not conform with changes to the IRC, as it did by amending section 39-22-104 both in 2020 and 2021.  But until such amendments become effective, Colorado law automatically incorporates amendments to the IRC.

### 5.    Application

¶ 33     The Anschutzes filed an amended state income tax return for the 2018 tax year, relying on the CARES Act provisions that

16

amended the IRC.[10] Those provisions allowed taxpayers to reduce their taxable income by the amount of excess business loss they experienced. By its terms, the CARES Act provisions applied to the 2018 tax year and nothing in the state income tax code limited that modification.

¶ 34 Accordingly, the district court erred by granting the Department's motion to dismiss.

## IV. Disposition

¶ 35 We reverse the district court's judgment and remand the case for further proceedings.

JUDGE FOX and JUDGE YUN concur.

---

[10] The Department has never contended that the Anschutzes' amended return was untimely. Thus, we assume that it was timely filed.